## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZAIDA HICKS, STEPHANIE VARGAS, SUMNER DAVENPORT, STEPHANIE PINGHERA, KARRIE RUGGIERO, MARJIE SANTIAGO, KATHLEEN SECOR, GWENDOLYN SIMMONS, NANCY SPRING, HEIDI TREMBLY, LISA TURNER, and REBECCA VEGA, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br>v.<br><br>L'OREAL USA, INC.,<br><br>　　　　Defendant. | Civil Action No.: 1:22-cv-01989-JPC<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |
| SONIA CAUCHI and STEPHANIE BRANTON individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br>v.<br><br>L'OREAL USA, INC.,<br><br>　　　　Defendant. | Civil Action No.: 1:22-cv-03926-JPC |

Plaintiffs, on behalf of themselves and all others similarly situated, file this First Amended Consolidated Class Action Complaint against Defendant L'Oreal USA, Inc. ("L'Oreal" or "Defendant"). On personal knowledge of their own circumstances and upon investigation and information and belief of their counsel, Plaintiffs allege the following:

### JURISDICTION AND VENUE

1.　　This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this civil action is a class action in which the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and members of the putative class are citizens of a state that is different than the state of which Defendant is a citizen.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Class Members' claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction.

3.      Defendant maintains its corporate headquarters in New York, where it directed the activities of designing, developing, advertising, selling, and distributing the cosmetic products described herein to consumers throughout New York, either directly or indirectly through third parties or related entities. Defendant obtained the benefits of New York law and profited from New York commerce.

## PARTIES

4.      Plaintiff Zaida Hicks resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

5.      Plaintiff Stephanie Vargas resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

6.      Plaintiff Sumner Davenport resides in California, as she did at all relevant times during the conduct alleged in this Complaint.

7.      Plaintiff Stephanie Pinghera resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

8.      Plaintiff Karrie Ruggiero resides in New Jersey, as she did at all relevant times during the conduct alleged in this Complaint.

9.      Plaintiff Marjie Santiago resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

10.      Plaintiff Kathleen Secor resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

11.      Plaintiff Gwendolyn Simmons resides in Michigan, as she did at all relevant times during the conduct alleged in this Complaint.

12.      Plaintiff Nancy Spring resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

13.     Plaintiff Heidi Trembly resides in Iowa, as she did at all relevant times during the conduct alleged in this Complaint.

14.     Plaintiff Lisa Turner resides in North Carolina, as she did at all relevant times during the conduct alleged in this Complaint.

15.     Plaintiff Rebecca Vega resides in New Jersey, as she did at all relevant times during the conduct alleged in this Complaint.

16.     Plaintiff Sonia Cauchi resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

17.     Plaintiff Stephanie Branton resides in New York, as she did at all relevant times during the conduct alleged in this Complaint.

18.     Defendant L'Oreal USA, Inc. is a Delaware corporation with a principal place of business in New York, New York. At all times relevant to this Complaint, L'Oreal USA, Inc. has transacted business in this judicial district and throughout the United States, including in New York.

## STATEMENT OF THE CASE

19.     Defendant L'Oreal USA, Inc., one of the largest cosmetics companies in the world, intentionally fails to disclose to consumers that its popular waterproof mascara products contain harmful Per- and Polyfluoroalkyl Substances ("PFAS") despite the fact that L'Oreal knew or should have known that this information is material to consumers.

20.     Instead, L'Oreal represented that its waterproof mascaras were safe, effective, high quality, and appropriate for use on consumers' eyelashes and around their eyes.

21.     However, what L'Oreal did not tell consumers is that PFAS, which can have adverse effects on humans and can bioaccumulate in human's bodies, are present in detectable amounts in its waterproof mascaras. Even very low levels of PFAS can be toxic to humans. Indeed, the Environmental Protection Agency (EPA) has issued an advisory indicating that ***any*** detectable level of certain PFAS, such as perfluorooctanoic acid (PFOA) and perfluorooctane sulfonic acid (PFOS), is an amount that can be toxic to humans.

22.     This is true even where PFAS are not ingested but rather are applied to skin because PFAS can be absorbed through the skin. This risk is particularly high where the PFAS are applied near the eyes, as is the case with mascara products.

23.     From at least 2018 through the present, Defendant's waterproof mascara was misleadingly and deceptively advertised because Defendant failed to disclose the presence of PFAS in L'Oreal's waterproof mascara products. This failure to warn injured reasonable consumers, including Plaintiffs, who reasonably relied upon Defendant's misleading packaging, labeling, and ingredient lists that did not disclose that the waterproof mascara products contained harmful PFAS. Had Plaintiffs and the putative Class known that L'Oreal's waterproof mascara products contained PFAS, they would not have purchased the products and/or would have paid less for them.

## I.     THE COSMETICS INDUSTRY

### A.     Cosmetics Are a Multi-Billion Dollar Industry that Is Largely Unregulated

24.     Personal care products are a multi-billion-dollar industry in the United States. In 2019 alone, the retail value of personal care products was estimated to be greater than $100 billion in North America, approximately $20 billion of which came from cosmetic products.

25.     In the United States, women spend, on average, $313 per month on beauty products, including cosmetics, and that number is only growing.[1] The most popular products are eye products, particularly mascaras, and lip products.

26.     The cosmetics industry is dominated by large, multinational companies with significant brand recognition and correspondingly significant sales, including L'Oreal USA, Inc. (which owns both L'Oreal and Maybelline branded products), Coty (which owns the CoverGirl brand), and Revlon.[2]

27.     A recent study from 2021 found that U.S. consumers were both most aware of, and

---

[1] https://www.byrdie.com/average-cost-of-beauty-maintenance

[2] https://www.statista.com/topics/1008/cosmetics-industry/

had actually purchased products within the last year from, the CoverGirl, Maybelline, L'Oreal and Revlon brands.[3]

28.     The use and labeling of cosmetic product ingredients in the United States is governed by the Federal Food, Drug, and Cosmetics Act of 1938 and the Fair Packaging and Labeling Act of 1967. Cosmetic products are those that are "intended to be rubbed, poured, sprinkled, sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering the appearance." FD&C Act, sec. 201(i).

29.     However, with the exception of some color additives, the Food and Drug Administration (FDA) does not require cosmetic ingredients or cosmetics products to have FDA approval prior to entering the market, and federal regulations also do not regulate the type or kind of testing that is needed to determine the safety of cosmetic ingredients or products.[4]

30.     The only oversight that exists is entirely voluntary on the part of cosmetics companies. The Voluntary Cosmetic Reporting Program is a "voluntary registration system for cosmetic products" where companies can register the brand name and ingredients of their products.

31.     The identification of cosmetic product ingredients in the United States generally follow conventions set forth by the International Nomenclature of Cosmetic Ingredients ("ICNI"), which established standards for naming cosmetic ingredients. The ICNI list is maintained by the Personal Care Products Council, an industry trade group comprised of over 600 member companies.

32.     The Personal Care Products Council also funds the Cosmetic Ingredient Review, which purportedly assesses the safety of cosmetic ingredients. But, again, participation is entirely voluntary, meaning that, in general, the cosmetics industry is subject to essentially no oversight and consumers are left to simply trust the manufacturers of cosmetics products that the products are safe for use.

---

[3] *Id.*

[4] https://www.fda.gov/cosmetics/voluntary-cosmetic-registration-program

**B.      Consumers Value Safe and Healthy Cosmetic Products**

33.      The global market for natural cosmetics and personal care products has increased substantially over the past three years, increasing from almost $34.5 billion in 2018 to roughly $54.5 billion expected in the year 2027.[5]

34.      This growth has been driven by increased consumer demand for natural ingredients and "green" products in general.[6]   One study found that approximately 70% of U.S. consumers ages 18-29 would prefer to use natural or organic cosmetics.[7]

35.      The growth has also been driven by legitimate concerns that consumers have about the contents of the products they use on their skin and body. For example, consumers have pursued high-profile lawsuits like the one against Johnson & Johnson related to its baby powder causing ovarian cancer (*see, e.g.*, *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 724 (Mo. Ct. App. 2020), *reh'g and/or transfer denied* (July 28, 2020), *transfer denied* (Nov. 3, 2020), *cert. denied*, No. 20-1223, 2021 WL 2194948 (U.S. June 1, 2021)) or the class action case against Wen hair care company alleging that its products made people's hair fall out (*see, e.g.*, *Collazo v. Wen by Chaz Dean, Inc.*, No. 215CV01974ODWAGR, 2015 WL 4398559, at *1 (C.D. Cal. July 17, 2015)). These types of high-profile lawsuits have made consumers afraid of chemicals and more interested in products that are "natural" and "safe."[8]

36.      In response, many companies are replacing synthetic chemicals with natural ingredients.

37.      For example, popular beauty retailer Sephora has created an internal "seal of approval" to designate "clean" beauty brands. As of July 2021, one of Sephora's requirements for that designation is that the product does not contain PFAS.[9]  Sephora's website lists 374 cosmetics

---

[5] https://www.statista.com/statistics/673641/global-market-value-for-natural-cosmetics/

[6] https://www.futuremarketinsights.com/reports/organic-cosmetics-market

[7] https://disturbmenot.co/beauty-industry-statistics/

[8] https://www.vox.com/the-goods/2018/9/18/17866150/natural-clean-beauty-products-feinstein-cosmetics-bill-fda

[9] https://www.sephora.com/beauty/clean-beauty-products

products, including mascara and lip products, that have attained its "clean" designation.[10]

38.     Ulta Beauty, another large cosmetics retailer, also maintains a "clean ingredients" list of cosmetics made without certain harmful ingredients, including PFAS.[11]

39.     Similarly, this increased demand has spurred the expansion of retailers dedicated to "clean" beauty, including Credo, which launched in 2015 and currently has ten brick and mortar retail locations in the U.S. and sells 418 separate cosmetics products on its website, all of which it contends are free of any of the 2,700 ingredients on its "Dirty List," including PFAS.[12]

40.     Even retailers like Target and CVS have dedicated additional shelf-space to natural beauty offerings.[13]

41.     Retailer willingness to incorporate and promote "clean" beauty products is due in part to consumers' willingness to pay more for these products that they perceive as a safer and healthier alternative to traditional brands. For example, a popular brand called Benefit, which is not "clean," sells a highly-rated foundation for $30, whereas Tarte, another popular brand, sells a highly-rated "clean" foundation for $39.[14]

## II.     PFAS ARE TOXIC AND POSE SUBSTANTIAL HEALTH RISKS TO HUMANS AND THE ENVIRONMENT

42.     PFAS are human-made, synthetic chemicals that do not exist naturally in the environment. They have been used for decades in industrial processes and to produce consumer, household, and commercial products.

43.     Consumer products manufactured with PFAS were often promoted as being resistant to heat and stains, long-lasting, and capable of repelling water, oil, and grease. Companies have utilized PFAS to make, among other things, carpets, clothing, fabrics for furniture, paper

---

[10] https://www.sephora.com/shop/clean-makeup

[11] https://www.ulta.com/conscious-beauty/clean-ingredients/

[12] https://cdn.shopify.com/s/files/1/0637/6147/files/The_Dirty_List_PDF_August_Update.pdf?v=1598294504

[13] https://www.vox.com/the-goods/2018/9/18/17866150/natural-clean-beauty-products-feinstein-cosmetics-bill-fda

[14] https://www.huffpost.com/entry/why-clean-beauty-is-more-expensive_l_5fdb7307c5b6f24ae35e39d8

packaging for food, and other materials such as cookware that are resistant to water, grease, or stains.

44.     Although there may be thousands of unique PFAS in existence, the details of many of these compounds are proprietary and known only to manufacturers and industrial users. But what all PFAS share is that they contain multiple carbon-fluorine bonds, considered one of the strongest in chemistry, making them highly persistent in the environment and in human and animal bodies. The quality of being highly persistent in the human body gives all PFAS a shared toxicity and, in this way, PFAS are similar to polychlorinated biphenyls (PCBs) and Dichlorodiphenyltrichloroethane (DDT), which are also persistent in the human body and cause chronic disease.

45.     PFAS are extremely soluble in water, which has led to their discovery in certain bodies of water, as well as some drinking water resources, fish, and marine mammals.

46.     PFAS can be categorized as either "long-chain" or "short-chain" based on the number of carbon atoms they contain. Long-chain PFAS contain 7 or more carbon atoms, while PFAS containing fewer than 7 carbon atoms are considered short-chain. Long-chain PFAS bioaccumulate and bio-magnify in both humans and in wildlife.

47.     In the Stockholm Convention on Persistent Organic Pollutants, PFOS is listed in Annex B. Annex B consists of persistent organic pollutants whose production, use, import, and export the Convention aims to restrict.

48.     The European Union specifically regulates products containing PFAS, restricting the manufacture or import of products containing more than 25 parts per billion (ppb) of PFOA.

49.     In October 2021, the US government announced its "PFAS Strategic Roadmap," which is an interagency plan to combat the continued use and release of PFAS. As part of the Strategic Roadmap, the EPA committed to designating PFOA and PFOS as "hazardous substances" under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"); finalizing a PFAS reporting rule under the Toxic Substances Control Act ("TSCA") section 8(e); and publishing toxicity assessments for 7 widely used PFAS, including the short-

chain compound GenX, PFBA, PFHxA, PFHxS, PFNA, and PFDA.

50.    Following announcement of the Strategic Roadmap, a majority of the EPA's Science Advisory Board ("SAB") agreed with the EPA that PFOA is a "likely carcinogen," with some members supporting a designation of "carcinogen." For PFOS, the SAB indicated that the evidence supports a label of "likely carcinogen."

51.    Short-chain PFAS unfortunately pose health and safety risks that are similar to their long-chain counterparts.

52.    Short-chain PFAS consist of multiple carbon-fluorine bonds, which, like long-chain PFAS, makes them highly persistent in the environment. They also bioaccumulate in human and animal bodies.

53.    A 2019 study conducted by the U.S. Department of Health and Human Services' National Toxicology Program found that short-chain PFAS have the same adverse effects as long-chain compounds. This study determined that both long and short-chain PFAS compounds affect the same organ systems, with the greatest impact observed in the liver and thyroid hormones.[15]

54.    Humans may be exposed to PFAS through a variety of pathways, including ingestion, inhalation, and skin absorption. Studies dating back at least a decade have indicated that PFAS can be absorbed through skin, with evidence showing that PFAS in the blood increase after application to skin.

55.    PFAS, both long and short chain, are toxic to humans at extremely low levels. Exposure to PFAS is associated in the medical and scientific literature with harmful and serious health effects in humans and animals, including but not limited to: (a) altered growth; (b) impacts to learning and behavior of infants and older children; (c) lowering a woman's chance of getting pregnant; (d) interference with the body's natural hormones; (e) increased cholesterol levels; (f) modulation of the immune system; (g) testicular and kidney cancers; (h) thyroid disease; (i) high uric acid levels; (j) elevated liver enzymes; (k) ulcerative colitis; and (l) pregnancy-induced

---

[15] https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html

hypertension.

56.     The International Agency for Research on Cancer ("IARC") has classified PFOA as possibly carcinogenic to humans.[16]

57.     There is also evidence in the scientific literature that PFAS exposure is positively correlated with certain metabolic diseases, such as diabetes, overweight, obesity, and heart disease.

58.     The Center for Disease Control's Agency for Toxic Substances and Disease Registry has recognized that exposure to PFAS may impact the immune system and reduce antibody response to vaccines. This is especially significant given the current public health risks posed by COVID-19 and efforts to protect against the virus with vaccines.

59.     PFAS is capable of crossing the placenta, meaning pregnant women transfer PFAS to their unborn children. Women exposed to PFAS during pregnancy have higher risks of gestational diabetes and pre-eclampsia, and their babies are more likely to undergo abnormal growth in utero, leading to low birth weight, and later face an increased risk of childhood obesity and infections.

60.     Researchers have begun to find significant increases of certain short-chain PFAS in the blood of sample populations, raising concerns that short-chain PFAS are assuming the body burden once exclusively occupied by long-chain compounds.

61.     However, only in recent years has the proliferation of PFAS in consumer products, and their consequent risks, begun to be publicized and discussed in the media and scientific literature.

62.     Based on this newly-available information, consumers are rightfully concerned about the presence or risk of PFAS in various products.

63.     However, PFAS are essentially unregulated at the federal level. For example, the Safe Drinking Water Act ("SDWA") protects public water supplies across the U.S. and is enforced by the EPA. Under this law, the EPA has not (although it could) formally created a Maximum

---

[16]https://monographs.iarc.who.int/wp-content/uploads/2018/06/mono110-01.pdf?source=post_page

Contaminant Level for PFAS in the water supply.

64.    In June 2022, the EPA announced a lifetime health advisory related to PFAS. A health advisory is not a binding regulation but serves as "informal technical guidance to assist government officials. The June 2022 advisory sets lifetime health advisory levels for PFOA at 0.004 parts per trillion (ppt) and PFOS at 0.02 ppt. These levels are below the detection capability of most measurement devices, meaning that EPA considers any detection of PFOA or PFOS to exceed the lifetime health advisory level. The EPA advisory also set a lifetime health advisory level for the short-chain GenX at 10 ppt and for PFBS, a replacement for PFOS, at 2,000 ppt.[17]

65.    On July 28, 2022, the National Academy of Science, Engineering, and Medicine, at the request at CDC, produced a report advising clinicians on how to test, diagnose, and treat individuals exposed to PFAS. The report recommends that doctors screen blood tests for a range of PFAS and advises that if a patient's blood shows combined PFAS above 20 nanograms per milliliter, the person is at high risk of adverse health effects. Individuals with combined PFAS between 2 and 20 nanograms per milliliter are at a "concern for adverse effects."[18]

66.    The State of New York was one of the first to recognize that PFAS were harmful to humans and should be regulated. In 2016, it took steps to regulate when and how PFAS could knowingly be released into the environment, for example for firefighting purposes.[19]  Then, in 2020, New York enacted a law prohibiting the sale of food packaging containing PFAS, effective Dec. 31, 2022.[20]

67.    In October 2020, California passed a law titled the Toxic Free Cosmetics Act, Assembly Bill 2762, that, starting January 1, 2025, will prohibit the manufacturing or selling of

---

[17]https://www.epa.gov/newsreleases/epa-announces-new-drinking-water-health-advisories-pfas-chemicals-1-billion-bipartisan.

[18] https://nap.nationalacademies.org/catalog/26156/guidance-on-pfas-exposure-testing-and-clinical-follow-up

[19] https://www.dec.ny.gov/chemical/108831.html

[20]https://www.natlawreview.com/article/new-york-bans-pfas-food-packaging#:~:text=New%20York%20State%20Governor%20Andrew,%2C%20effective%20December%2031%2C%202022

any cosmetic product with any intentionally added amount of 24 specified chemicals, including PFAS.

68.     In March 2021, California's Office of Environmental Health Hazard Assessment ("OEHHA") released a Notice of Intent to list PFOA as a carcinogen under Proposition 65. In December 2021, the OEHHA approved the listing of PFOS as a carcinogen under Proposition 65.

69.     California recently passed legislation banning the use of PFAS in paper-based food packaging as well as the disclosure of the presence of PFAS in cookware.[21]  This bill, Assembly Bill 1200, builds off similar food-packaging legislation passed in 2020 in New York.[22]

70.     Similarly, in July of 2021, the State of Connecticut signed a bill into law banning the use of firefighting foam and food packaging that contains PFAS.[23]  An even broader law was passed in Maine in July 2021 that bans PFAS in nearly all products, stating as of Jan. 1, 2030, "a person may not sell, offer for sale or distribute for sale" in Maine products where PFAS has been "intentionally added" except in cases of "unavoidable use."[24]  Similar legislation has also been passed in Vermont and Washington.[25]

71.     As the risks associated with PFAS become more widely known, it is likely that consumer awareness will continue to grow. It is reasonable for consumers to be concerned about these chemicals, which carry significant health risks and are often undisclosed by manufacturers.

## III.     THE USE OF PFAS IN COSMETIC PRODUCTS

72.     PFAS are used in cosmetic products as emulsifiers, antistatics, stabilizers, surfactants, film formers, viscosity regulators, and solvents. PFAS may be added to products to make them more water-resistant, durable, and spreadable.

---

[21] https://www.nrdc.org/experts/avinash-kar/ca-bill-reduce-toxic-pfas-exposures-passed-legislature

[22] *Id.*

[23] https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2021/07-2021/Governor-Lamont-Signs-Legislation-Banning-Use-Of-PFAS

[24] https://www.reuters.com/legal/litigation/maine-outlaws-pfas-products-with-pioneering-law-2021-07-16/

[25] https://www.natlawreview.com/article/connecticut-and-vermont-ban-pfas-food-packaging

73.     Certain PFAS may be identified on a cosmetic product's label or on its ingredient list.

74.     The most common PFAS identified and/or disclosed as ingredients in cosmetic products are polytetrafluoroethylene ("PTFE"), perfluorooctyl triethoxysilane, perfluorononyl dimethicone, perfluorodecalin, and perfluorohexane.

75.     PTFE is known by its brand name, Teflon. According to a 2018 market analysis, Teflon was disclosed as an ingredient in 66 different cosmetic products from 15 brands. Teflon was the most common PFAS compound identified in a product's ingredient list.[26]

76.     This 2018 market analysis identified 13 different PFAS compounds in nearly 200 products from 28 brands.[27]  These compounds were intentionally added ingredients disclosed in each product's ingredient list.

77.     Because there are no formal federal regulations governing what cosmetic labels must disclose, many cosmetic products that contain PFAS do not disclose this on the product label or on the ingredient list.

78.     The 2018 market analysis reviewed only PFAS ingredients that were disclosed in an ingredient list or product label. Disclosed PFAS ingredients, however, make up only a fraction of the PFAS contained in cosmetic products.

79.     PFAS occurs in cosmetic products both as an intended ingredient and as degradation products and impurities from the production of certain PFAS precursors used in certain products.

80.     Prior to 2021, no peer-reviewed research had been published analyzing whether PFAS were present in cosmetic products where the label did not disclose the presence of any such

---

[26] https://www.ewg.org/skindeep/contents/is-teflon-in-your-cosmetics/#.Wqk_bb3wajT

[27] PFAS compounds identified by the analysis included: (i) PTFE, (ii) perfluorononyl dimethicone, (iii) perfluorodecalin, (iv) C9-15 fluoroalcohol phosphate, (v) octafluoropentyl methacrylate, (vi) perfluorohexane, (vii) pentafluoropropane, (viii) polyperfluoroethoxymethoxy difluoroethyl peg phosphate, (ix) polyperfluoroethoxymethoxy peg-2 phosphate, (x) methyl perfluorobutyl ether, (xi) perfluorononylethyl carboxydecyl peg-10 dimethicone, (xii) perfluorodimethylcyclohexane, and (xiii) perfluoroperhydrophenanthrene.

compounds.

81.     In June 2021, researchers at Notre Dame published a peer-reviewed analysis of 231 cosmetic products using particle-induced gamma ray emission ("PIGE") to screen for total fluorine. Researchers analyzed lip products, eye products, foundations, face products, mascaras, concealers, and eyebrow products purchased from retailers such as Ulta Beauty, Sephora, Target, and Bed Bath & Beyond.[28]

82.     Because all PFAS are comprised of carbon-fluorine bonds, analyzing a product for total fluorine is an accepted methodology to investigate whether PFAS are present.

83.     Foundations produced the highest median total fluorine concentration, while mascaras produced the largest range of total fluorine measurements. Several mascaras gave the highest fluorine concentrations measured. The three product categories with the highest proportion of fluorine concentrations were foundations, mascaras, and lip products.

84.     Researchers found high fluorine levels in products commonly advertised as "wear-resistant" to water and oils or "long-lasting," including foundations, liquid lipsticks, and waterproof mascaras. Industrial and consumer products containing PFAS are often described as water or stain-resistant.

85.     Researchers performed a further analysis of 29 foundations, mascaras, and lip products using liquid chromatography-tandem mass spectrometry and gas chromatographic mass spectrometry.

86.     This further analysis revealed that short-chain PFAS were most commonly detected in these products.

87.     However, researchers also found that the 29 products also contained long-chain PFAS.

88.     Only 8% of the 231 cosmetics screened for total fluorine listed any PFAS as an ingredient and only 3% of the 29 products in the second round of testing listed any PFAS as an

---

[28] https://pubs.acs.org/doi/10.1021/acs.estlett.1c00240

14

ingredient. Long and short-chain PFAS were detected in all 29 products analyzed in the second round of testing, meaning that very few disclosed that PFAS were present in the product.

89.     Some cosmetic product ingredients, such as mica, talc, silica, Nylon-12, and color additives, are treated with PFAS to provide hydrophobic properties.

90.     The use of PFAS in cosmetic products is likely to cause unwanted or unforeseen human exposures. Consumers may inadvertently ingest PFAS from liquid lip products or absorb PFAS from mascara through their tear ducts. PFAS may be absorbed through the skin from foundations or other products that require dermal applications.

91.     In addition, PFAS in cosmetic products contributes to PFAS entering wastewater streams and cause ecosystem exposures when those products are discarded in landfills.

92.     Because many PFAS are not disclosed on product labels or in a product's ingredient list, consumers are likely unaware of their personal exposure, as well as their contribution to ecosystem exposures.

93.     Following publication of the June 2021 research, the federal government moved to curtail the widespread inclusion of PFAS in cosmetic products.

94.     In June 2021, bipartisan legislation was introduced in the U.S. Senate by Senator Susan Collins (R-ME) and Senator Richard Blumenthal (D-CT) that would ban PFAS in cosmetic products, including makeup, moisturizer, and perfume. That proposed legislation would direct the FDA to issue a proposed rule banning the intentional addition of PFAS in cosmetics within 270 days of the law's enactment and require a final rule to be issued 90 days thereafter.[29]  Similar legislation was introduced in the House of Representatives as well by Representatives Debbie Dingell (D-MI), Brian Fitzpatrick (R-PA), Annie Kuster (D-NH), and John Katko (R-NY).[30]

95.     Members of the scientific community support this proposed legislation. Arelene Blum, PhD, who is the executive director of the Green Science Policy Institute and a co-author of

---

[29] https://www.collins.senate.gov/newsroom/collins-blumenthal-introduce-bill-ban-pfas-chemicals-cosmetics

[30] https://debbiedingell.house.gov/news/documentsingle.aspx?DocumentID=3097

the Notre Dame study, stated, "PFAS chemicals are not necessary for makeup. Given their large potential for harm, I believe they should not be used in any personal care products." And Scott Faber, the Senior Vice President of Government Affairs for the Environmental Working Group stated, "Toxic forever chemicals have no place in personal care products."[31]

## IV.   INDEPENDENT LAB TESTING CONFIRMS PRESENCE OF PFAS IN CERTAIN L'OREAL COSMETIC PRODUCTS

96.     After reviewing the study conducted by Notre Dame researchers, Plaintiffs sought independent third-party testing to determine whether certain L'Oreal cosmetic products contained PFAS.

97.     To perform this testing, Plaintiffs sought out an independent laboratory that utilized industry standard techniques to detect PFAS constituents in cosmetic products. The laboratory analysis tested for approximately 30 specific PFAS.

98.     Plaintiffs' independent testing from a third-party lab determined that PFAS, including certain long-chain PFAS like PFOA, were present at detectable levels within several popular L'Oreal waterproof mascara products, including L'Oreal Voluminous Waterproof Mascara, Voluminous Lash Paradise™ Waterproof Mascara, Maybelline Volum' Express the Falsies Waterproof Mascara, Maybelline Volum' Express Total Temptation Waterproof Mascara, Maybelline Great Lash Waterproof Mascara, and Maybelline Total Temptation Waterproof Mascara (collectively, the "Waterproof Mascara Products").

99.     Plaintiffs' lab analysis detected PFOA in multiple Waterproof Mascara Products, as well as perfluorohexanoic acid (PFHxA), perfluorododecanesulfonic acid (PFDoS), NEtFOSE, and Adsorbable Organic Fluorine (AOF).

100.     In fact, the Waterproof Mascara Products were shown to have PFAS levels beyond the EPA's lifetime health advisory level, which is concerning because the Waterproof Mascara Products are applied directly to the eye area.

---

[31] https://www.collins.senate.gov/newsroom/collins-blumenthal-introduce-bill-ban-pfas-chemicals-cosmetics

101.    Although there are currently no laws or regulations governing allowable levels of PFAS in cosmetics, what is clear is that any amount of PFAS in products that may enter the body (such as through the eyes) is of concern and could potentially lead to adverse health effects.

102.    Thus, the presence of PFAS in a cosmetic product that is applied to the eye is material to Plaintiffs, customers, and members of the putative class.

103.    As set forth below, none of the Waterproof Mascara Products identified herein disclose to the consumer that they contain PFAS that were detected in Plaintiffs' testing.

## V.    L'OREAL'S MISLEADING ADVERTISING OF ITS WATERPROOF MASCARA PRODUCTS

104.    Defendant L'Oreal is one of the largest cosmetics companies in the world, generating over $7 billion in sales per year in the U.S. alone.[32] It owns and operates over 30 different beauty brands from its headquarters in New York City, and employs over 12,000 people in facilities across 14 different states.[33]

105.    According to L'Oreal, its mission is to bring "innovative, effective, high-quality products to our consumers around the world," and to do this L'Oreal selects suppliers "who are experts in their field" to ensure "the quality, effectiveness and traceability of our products."[34]

106.    L'Oreal develops all of its own products and employs 4,000 people in its Research & Innovation centers around the world. L'Oreal claims its research "provid[es] a continuously improving response to the Beauty needs and aspirations of consumers, while the products they create are ever more effective, and provide the highest standards of quality and safety."[35]

107.    L'Oreal touts its commitment to research, proudly declaring on its website that it employs over 470 U.S.-based researchers and scientists.[36]  The L'Oreal Paris brand website states

---

[32] https://www.loreal.com/en/usa/

[33] *Id.*

[34] https://www.loreal.com/en/audiences/suppliers/

[35] https://www.loreal.com/en/beauty-science-and-technology/beauty-research-and-innovation/

[36] *Id.*

that its products are "Rooted in Science" and "based on the deepest knowledge thanks to its 4000 researchers and 21 scientific research centers around a [sic] world."[37]

108.    L'Oreal claims that "The Quality and Safety of Our Products Are Our Priority" and that it is "Going above and beyond industry standards" by "providing the best [] ingredients, formulation, and performance [] in each and every one of our products."[38]

109.    One of L'Oreal's brands is its popular "L'Oreal Paris" cosmetics line, consisting of makeup (including mascara, lipstick, foundation, etc.), skin care (including eye cream, moisturizer, sunscreen, etc.), hair color (including permanent and semi-permanent color, hair highlights, and root touch up, etc.), hair care (including shampoo, conditioner, hair masks, etc.), and hair style (including hair gel, hair spray, heat protectant, etc.).[39]

110.    Within its "L'Oreal Paris" branded makeup line, L'Oreal offers ten different "waterproof" mascara products out of its 27 mascara products.[40]  L'Oreal also owns the Maybelline cosmetic brand and offers a number of "waterproof" mascaras under this brand.

111.    Of these products, Plaintiffs' testing has thus far determined that the Waterproof Mascara Products contain undisclosed PFAS.

112.    Upon information and belief, discovery is likely to reveal that additional Waterproof Mascara Products contain PFAS that is not disclosed on the product label or packaging.

113.    Defendant formulated, developed, manufactured, labeled, distributed, marketed, advertised, and sold the Waterproof Mascara Products throughout the United States, including in this District, during the Class Period.

114.    The packaging, labeling, and ingredient lists of the Waterproof Mascara Products that Plaintiffs and the Class relied upon when making their purchases of the Waterproof Mascara

---

[37] https://www.loreal.com/en/consumer-products-division/loreal-paris/

[38] https://www.loreal.com/en/commitments-and-responsibilities/for-our-products/product-quality-and-safety/

[39] https://www.lorealparisusa.com/

[40] *See* https://www.lorealparisusa.com/makeup/eye/mascara?page=2.

Products were prepared, reviewed, and/or approved by Defendant and their agents, and were disseminated by Defendant and their agents through the packaging, labeling, and ingredient lists that contained the misrepresentations and omissions alleged herein.

115.    Defendant intended for consumers, such as Plaintiffs, to rely on the statements and omissions on the packaging, labeling, and ingredient lists of the Waterproof Mascara Products when deciding to purchase them. As a result of Defendant's misrepresentations and omissions, reasonable consumers, including the Plaintiffs and the Class, were misled into purchasing the Waterproof Mascara Products when, if they had known the truth about the presence of PFAS, they would not have purchased them at all or would have paid less for those products.

116.    L'Oreal owns, manufactures, and distributes the Waterproof Mascara Products and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging, labeling, and ingredient lists of the Waterproof Mascara Products.

117.    Defendant is responsible for selecting and sourcing the ingredients used in the Waterproof Mascara Products and for conducting all relevant quality assurance protocols, including testing, for the Waterproof Mascara Products. Therefore, Defendant knew, or should have known, that failing to disclose the presence of detectable levels of PFAS was a material omission and that it was concealing the true quality, nature, and safety of the Waterproof Mascara Products.

118.    None of the Waterproof Mascara Products disclose on the packaging, labeling, or ingredient list that the mascara contains detectable levels of PFAS, including PFOA, PFHxA, PFDoS, and NEtFOSE, among others.

119.    All of the Waterproof Mascara Products are packaged with an ingredient list, which does not disclose the presence of PFAS in the Waterproof Mascara Products.

120.    The presence of the ingredient list leads reasonable consumers to believe that the list is exhaustive.

121.    In addition, several of the Waterproof Mascara Products contain misrepresentations

that would lead a reasonable consumer to conclude the products are safe and do not contain harmful carcinogenic PFAS compounds.

122. L'Oreal's Voluminous Waterproof Mascara, for example, states that the product is "ophthalmologist and allergy tested. Suitable for sensitive eyes and contact lens wearers."

123. An image of the product packaging is set forth below:



124. L'Oreal's Voluminous Lash Paradise Waterproof Mascara contains similar misrepresentations, stating that it is "ophthalmologist and allergy tested. Suitable for sensitive eyes. Tested under dermatological control for safety."



125.     Maybelline's Volum' Express the Falsies Waterproof Mascara and Maybelline the Colossal Waterproof Mascara both state that the product is "ophthalmologist tested. Suitable for contact wearers."



**VERY BLACK**
**NOIR INTENSE**
**NEGRO INTENSO**
0727211

## WASHABLE MASCARA

▸ **INSTANT FALSE LASH LOOK:** Kera-fiber infused formula builds corner to corner volume and fills gaps, does not clump. Flexible spoon brush easily glides through lashes, scooping and coating from root to tip. Ophthalmologist tested. Suitable for contact lenses.

▸ **TO USE:** For best results, hold brush with spoon side against lashes and sweep from root to tip. Repeat until desired look is achieved. Do not let dry between coats.

TO SAFEGUARD MAYBELLINE PURITY, RESERVE THIS PRODUCT FOR YOUR PERSONAL USE. TREAT THE APPLICATOR WITH THE HYGENIC CARE YOU GIVE YOUR EYES. NEVER APPLY THIS PRODUCT IN A MOVING VEHICLE. DO NOT DILUTE MASCARA WITH WATER, SALIVA OR ANY OTHER SUBSTANCE. CAP TIGHTLY AFTER USE. IF CHANGE IN ODOR OR APPEARANCE OCCURS, DISCONTINUE USE. DO NOT USE THIS OR ANY OTHER EYE COSMETIC IF YOUR EYE IS INJURED, IRRITATED, OR INFECTED. CONSULT A PHYSICIAN PROMPTLY.

## MASCARA LAVABLE

▸ **LOOK FAUX CILS INSTANTANÉ :** La formule enrichie de kéra-fibre procure un volume d'un coin à l'autre et remplit les espaces, sans grumeaux. La brosse flexible glisse facilement sur les cils, les soulève et les enrobe de la racine à la pointe. Testé sous contrôle ophtalmologique. Convient au port de lentilles cornéennes.

▸ **MODE D'EMPLOI :** Pour de meilleurs résultats, tenez la brosse avec le côté incurvé contre les cils et appliquez de la racine à la pointe. Répétez jusqu'à l'obtention de l'effet désiré. Ne laissez pas sécher entre les applications des différentes couches.

POUR CONSERVER LA PURETÉ DE VOTRE PRODUIT MAYBELLINE, N'EMPLOYEZ CE PRODUIT QUE POUR VOTRE UTILISATION PERSONNELLE. APPLIQUEZ LES MÊMES RÈGLES D'HYGIÈNE POUR L'APPLICATEUR QUE POUR VOS YEUX. N'APPLIQUEZ JAMAIS CE PRODUIT DANS UN VÉHICULE EN MOUVEMENT. NE LE DILUEZ PAS AVEC DE L'EAU, DE LA SALIVE OU TOUTE AUTRE SUBSTANCE. REFERMEZ HERMÉTIQUEMENT APRÈS USAGE. CESSEZ L'UTILISATION SI VOUS CONSTATEZ UN CHANGEMENT DANS L'ODEUR OU L'APPARENCE DU PRODUIT. N'UTILISEZ PAS CE PRODUIT OU TOUT AUTRE PRODUIT COSMÉTIQUE POUR LES YEUX SI VOUS AVEZ UNE BLESSURE, UNE IRRITATION OU UNE INFECTION À L'ŒIL. DANS UN TEL CAS, CONSULTEZ IMMÉDIATEMENT UN PROFESSIONNEL DE LA SANTÉ.

## MASCARA DE PESTAÑAS LAVABLE

▸ **LOOK PESTAÑAS POSTIZAS AL INSTANTE:** Fórmula con fibras pro-keratina, rellena los espacios entre las pestañas y aporta volumen al instante de extremo a extremo sin grumos. Cepillo flexible en forma de cuchara, se extiende fácilmente entre las pestañas, cubriéndolas de la raíz a la punta. Probado bajo control oftalmológico. Adecuado para usuarias de lentes de contacto.

▸ **MODO DE USO:** Para mejores resultados, utiliza el cepillo con el lado curvo hacia las pestañas y extiede de la raíz a la punta. Repite hasta lograr el look deseado. No dejes secar entre capas.

PARA PRESERVAR LA PUREZA DE ESTE PRODUCTO MAYBELLINE, RESÉRVALO PARA USO PERSONAL. TRATA AL APLICADOR CON EL MISMO CUIDADO HIGIÉNICO QUE TUS OJOS. NO APLIQUES EL PRODUCTO EN UN VEHÍCULO EN MOVIMIENTO. NO DILUYAS LA MASCARA CON AGUA, SALIVA U OTRA SUSTANCIA. CIERRA BIEN LA TAPA DESPUÉS DE USARLA. SI EXISTE UN CAMBIO EN OLOR O APARIENCIA, SUSPENDE SU USO. NO UTILICES ESTE NI OTRO PRODUCTO COSMÉTICO SI TIENES LOS OJOS LASTIMADOS, INFECTADOS O IRRITADOS. CONSULTA A UN MÉDICO DE INMEDIATO.

**INGREDIENTS:** 53156 1 AQUA/WATER/EAU, PARAFFIN, POTASSIUM CETYL PHOSPHATE, CERA ALBA/BEESWAX/CIRE DABEILLE, COPERNICIA CERIFERA CERA/CARNAUBA WAX/CIRE DE CARNAUBA, ACACIA SENEGAL GUM, GLYCERIN, CETYL ALCOHOL, ACRYLATES COPOLYMER, HYDROXYETHYLCELLULOSE, PHENOXYETHANOL, PEG/PPG-17/18 DIMETHICONE, STEARETH-20, HYDROLYZED CORN STARCH, SILICA, CAPRYLYL GLYCOL, SODIUM POLYMETHACRYLATE, SODIUM DEHYDROACETATE, HYDROGENATED JOJOBA OIL, HYDROGENATED PALM OIL, SIMETHICONE, RAYON, DISODIUM EDTA, STEARYL ALCOHOL, ARGININE, SERINE, MYRISTYL ALCOHOL, GLUTAMIC ACID, 2-OLEAMIDO-1,3-OCTADECANEDIOL, PANTHENOL, LAURETH-21, BHT. [+/- MAY CONTAIN/PEUT CONTENIR: CI 77491, CI 77492, CI 77499/IRON OXIDES, CI 77007/ULTRAMARINES, CI 75470/CARMINE, CI 77891/TITANIUM DIOXIDE, MICA, CI 77288/CHROMIUM OXIDE GREENS, CI 77289/CHROMIUM HYDROXIDE GREEN, CI 77742/MANGANESE VIOLET, CI 77510/FERRIC FERROCYANIDE] F.I.L.# D373147/5

6M

4   1554 21796   0

**M A Y B E L L I N E ®**
MAYBELLINE L.L.C. NEW YORK, NY 10001 • IMP. BY/PAR MAYBELLINE CANADA, MONTRÉAL, H4T 1K5
Made in USA of US and/or Imported Ingredients • Fait aux É.-U. avec des ingrédients américains
et/ou importés • Hecho en E.U.A. con ingredientes nacionales y/o importados • www.maybelline.com



126.    Maybelline Great Lash Waterproof Mascara states that it is "contact lens safe" and "hypoallergenic."



127.    These misrepresentations are likely to mislead a reasonable consumer, including Plaintiffs, into believing the Waterproof Mascara Products are safe for use and do not contain carcinogenic and/or toxic PFAS compounds not disclosed on the product label or packaging.

## VI.    PLAINTIFFS' USE OF L'OREAL'S WATERPROOF MASCARA PRODUCTS

### Zaida Hicks

128.    Plaintiff Hicks has been purchasing L'Oreal Voluminous Waterproof Mascara, Maybelline Volum' Express The Falsies Waterproof Mascara, and Maybelline Great Lash

Waterproof Mascara (collectively, the "Hicks Mascaras") since at least 2019.

129.   Each of the Hicks Mascaras was found to contain PFAS when tested by an independent lab.

130.   Plaintiff Hicks has had LASIK eye surgery performed twice and has sensitive eyes, which requires her to use medicated eye drops.

131.   Because of her eye health issues, when purchasing the Hicks Mascara, Plaintiff Hicks viewed and relied on the statements that The Falsies Waterproof Mascara is "ophthalmologist tested. Suitable for contact wearers," that Great Lash is "contact lens safe" and "hypoallergenic," and that Voluminous is "ophthalmologist and allergy tested. Suitable for sensitive eyes and contact lens wearers."

132.   As a result of Defendants' misrepresentations and omissions, Plaintiff Hicks purchased the Hicks Mascaras because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

133.   Plaintiff Hicks followed the instructions and applied the Hicks Mascaras around her eyes.

134.   Plaintiff Hicks estimates that she has purchased each of the Hicks Mascaras at least 2-3 times per year since 2019. Prior to purchase, Plaintiff Hicks saw and relied upon Defendant's packaging and the ingredient lists for each of the Hicks' Mascaras when making her decision to purchase one of the Waterproof Mascara Products.

135.   Plaintiff Hicks, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

136.   On information and belief, the Hicks Mascaras contained detectable levels of PFAS.

137.   Plaintiff Hicks was unaware that the Waterproof Mascara Products contained detectable levels of PFAS.

138.   Plaintiff Hicks would not have purchased the Hicks Mascaras, or would have paid

less for them, had she known that they contained and/or had a material risk of containing dangerous PFAS. In fact, Plaintiff Hicks has stopped using Hicks Mascaras since learning they contain PFAS.

139.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Hicks was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff would not have purchased if she had not been misled by Defendant.

140.    If Plaintiff Hicks or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Stephanie Vargas**

141.    For the last 10 years, Plaintiff Vargas has purchased Maybelline's Volum' Express The Falsies Waterproof Mascara approximately once every 4-5 months.

142.    Maybelline's Volum' Express The Falsies Waterproof Mascara was found to contain PFAS when tested by an independent lab.

143.    Plaintiff Vargas wears contact lenses.

144.    After viewing YouTube videos comparing different mascaras and various product packages regarding the purported contents and benefits of the mascaras, including the statements that it is "ophthalmologist tested. Suitable for contact wearers," Plaintiff Vargas purchased The Falsies Waterproof Mascara.

145.    Prior to purchase, Plaintiff Vargas saw and relied upon Defendant's packaging and ingredient list for The Falsies Waterproof Mascara when making her decision to purchase one of the Waterproof Mascara Products.

146.    As a result of Defendants' misrepresentations and omissions, Plaintiff Vargas purchased The Falsies Waterproof Mascara because she reasonably believed it was safe for use

around, adjacent to, and near her eyes.

147.   On information and belief, The Falsies Waterproof Mascara purchased by Plaintiff Vargas contained detectable levels of PFAS.

148.   Plaintiff Vargas would not have purchased The Falsies Waterproof Mascara, or would have paid less for it, had she known that it contained and/or had a material risk of containing dangerous PFAS. In fact, Plaintiff Vargas has stopped using The Falsies Waterproof Mascara since learning it contains PFAS.

149.   Plaintiff Vargas followed the instructions and applied The Falsies Waterproof Mascara Products around her eyes.

150.   Plaintiff Vargas was unaware that The Falsies Waterproof Mascara contained detectable levels of PFAS.

151.   Plaintiff Vargas, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

152.   The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Vargas was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Vargas would not have purchased if she had not been misled by Defendant.

153.   If Plaintiff Vargas or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Sumner Davenport**

154.   After viewing in-store advertisements and product packaging for L'Oreal's Voluminous Waterproof Mascara regarding its purported contents and benefits, including the statements that it is "ophthalmologist and allergy tested" and "Suitable for sensitive eyes and

contact lens wearers," Plaintiff Davenport began purchasing L'Oreal's Voluminous Waterproof Mascara in approximately 2017.

155.   L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when tested by an independent lab.

156.   Plaintiff Davenport estimates that during summer 2017, 2017, 2019, 2020, and 2021, she purchased L'Oreal's Voluminous Waterproof Mascara on approximately seven occasions.

157.   As a result of Defendants' misrepresentations and omissions, Plaintiff Davenport purchased L'Oreal's Voluminous Waterproof Mascara because she reasonably believed it was safe for use around, adjacent to, and near her eyes.

158.   On information and belief, the L'Oreal Voluminous Waterproof Mascara purchased by Plaintiff Davenport contained detectable levels of PFAS.

159.   Plaintiff Davenport would not have purchased L'Oreal's Voluminous Waterproof Mascara, or would have paid less for it, had she known that it contained dangerous PFAS. In fact, Plaintiff Davenport has stopped using L'Oreal's Voluminous Waterproof Mascara since learning it contains PFAS.

160.   Plaintiff Davenport followed the instructions and applied L'Oreal's Voluminous Waterproof Mascara Products around her eyes.

161.   Plaintiff Davenport was unaware that L'Oreal's Voluminous Waterproof Mascara contained detectable levels of PFAS.

162.   Plaintiff Davenport, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

163.   The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Davenport was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Davenport would not have purchased if she had not

been misled by Defendant.

164.    If Plaintiff Davenport or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Stephanie Pinghera**

165.    During the applicable statute of limitations period, Plaintiff Pinghera purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

166.    L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when tested by an independent lab.

167.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Bronx County, New York.

168.    Plaintiff began purchasing the Products on about January 1, 2020, and used them about daily until about November 1, 2021.

169.    As a result of Defendants' misrepresentations and omissions, Plaintiff Pinghera purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

170.    On information and belief, the Products purchased by Plaintiff Pinghera contained detectable levels of PFAS.

171.    Plaintiff Pinghera would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using the Products since learning they contain PFAS.

172.    Plaintiff Pinghera followed the instructions and applied the Products according to the instructions.

173.    Plaintiff Pinghera was unaware that the Products contained detectable levels of PFAS.

174.    Plaintiff Pinghera, like other reasonable consumers, reasonably relied on

Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

175.     The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Pinghera was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Pinghera would not have purchased if she had not been misled by Defendant.

176.     If Plaintiff Pinghera or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Karrie Ruggiero**

177.     During the applicable statute of limitations period, Plaintiff Ruggiero purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

178.     L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when tested by an independent lab.

179.     Plaintiff purchased Defendant's Products for her personal use during the Class Period in Cumberland County, New Jersey.

180.     Plaintiff began purchasing the Products some time before 2018, and used them about daily until about August 1, 2021.

181.     As a result of Defendants' misrepresentations and omissions, Plaintiff Ruggiero purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

182.     On information and belief, the Products purchased by Plaintiff Ruggiero contained detectable levels of PFAS.

183.     Plaintiff Ruggiero would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using

the Products since learning they contain PFAS.

184.    Plaintiff Ruggiero followed the instructions and applied the Products according to the instructions.

185.    Plaintiff Ruggiero was unaware that the Products contained detectable levels of PFAS.

186.    Plaintiff Ruggiero, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

187.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Ruggiero was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Ruggiero would not have purchased if she had not been misled by Defendant.

188.    If Plaintiff Ruggiero or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Marjie Santiago**

189.    During the applicable statute of limitations period, Plaintiff Santiago purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

190.    L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when tested by an independent lab.

191.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Queens County, New York.

192.    Plaintiff began purchasing the Products prior to 2018 and used them about three times a week until about January 1, 2022.

193.    As a result of Defendants' misrepresentations and omissions, Plaintiff Santiago

purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

194.   On information and belief, the Products purchased by Plaintiff Santiago contained detectable levels of PFAS.

195.   Plaintiff Santiago would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using the Products since learning they contain PFAS.

196.   Plaintiff Santiago followed the instructions and applied the Products according to the instructions.

197.   Plaintiff Santiago was unaware that the Products contained detectable levels of PFAS.

198.   Plaintiff Santiago, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

199.   The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Santiago was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Santiago would not have purchased if she had not been misled by Defendant.

200.   If Plaintiff Santiago or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Kathleen Secor**

201.   During the applicable statute of limitations period, Plaintiff Secor purchased Defendant's L'Oreal Voluminous Lash Paradise Waterproof Mascara, which contained PFAS.

202.   L'Oreal's Voluminous Lash Paradise Waterproof Mascara was found to contain

PFAS when it was tested by an independent lab.

203.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Monroe County, New York.

204.    Plaintiff began purchasing the Products some time before 2018, and used them about daily until about October 1, 2021.

205.    As a result of Defendants' misrepresentations and omissions, Plaintiff Secor purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

206.    On information and belief, the Products purchased by Plaintiff Secor contained detectable levels of PFAS.

207.    Plaintiff Secor would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using the Products since learning they contain PFAS.

208.    Plaintiff Secor followed the instructions and applied the Products according to the instructions.

209.    Plaintiff Secor was unaware that the Products contained detectable levels of PFAS.

210.    Plaintiff Secor, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

211.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Secor was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Secor would not have purchased if she had not been misled by Defendant.

212.    If Plaintiff Secor or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging

omission.

**Gwendolyn Simmons**

213.    During the applicable statute of limitations period, Plaintiff Simmons purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

214.    L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when it was tested by an independent lab.

215.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Wayne County, Michigan.

216.    Plaintiff began purchasing the Products on about January 1, 2001, and used them about three times weekly until approximately January 2022.

217.    As a result of Defendants' misrepresentations and omissions, Plaintiff Simmons purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

218.    On information and belief, the Products purchased by Plaintiff Simmons contained detectable levels of PFAS.

219.    Plaintiff Simmons would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using the Products since learning they contain PFAS.

220.    Plaintiff Simmons followed the instructions and applied the Products according to the instructions.

221.    Plaintiff Simmons was unaware that the Products contained detectable levels of PFAS.

222.    Plaintiff Simmons, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

223.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Simmons was

injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Profit would not have purchased if she had not been misled by Defendant.

224.    If Plaintiff Simmons or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Nancy Spring**

225.    During the applicable statute of limitations period, Plaintiff Spring purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

226.    L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when it was tested by an independent lab.

227.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Monroe County, New York.

228.    Plaintiff began purchasing the Products on about January 1, 2016, and used them about five times a week until about November 1, 2021.

229.    As a result of Defendants' misrepresentations and omissions, Plaintiff Spring purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

230.    On information and belief, the Products purchased by Plaintiff Spring contained detectable levels of PFAS.

231.    Plaintiff Spring would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using the Products since learning they contain PFAS.

232.    Plaintiff Spring followed the instructions and applied the Products according to the

instructions.

233.    Plaintiff Spring was unaware that the Products contained detectable levels of PFAS.

234.    Plaintiff Spring, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

235.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Spring was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Spring would not have purchased if she had not been misled by Defendant.

236.    If Plaintiff Spring or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Heidi Trembly**

237.    During the applicable statute of limitations period, Plaintiff Trembly purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

238.    L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when it was tested by an independent lab.

239.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Polk County, Iowa.

240.    Plaintiff began purchasing the Products some time before 2018, and used them about daily until about January 1, 2020.

241.    As a result of Defendants' misrepresentations and omissions, Plaintiff Trembly purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

242.    On information and belief, the Products purchased by Plaintiff Trembly contained

detectable levels of PFAS.

243.    Plaintiff Trembly would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. However, Plaintiff discontinued use of the products before learning that they contained PFAS.

244.    Plaintiff Trembly followed the instructions and applied the Products according to the instructions.

245.    Plaintiff Trembly was unaware that the Products contained detectable levels of PFAS.

246.    Plaintiff Trembly, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

247.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Trembly was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Profit would not have purchased if she had not been misled by Defendant.

248.    If Plaintiff Trembly or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Lisa Turner**

249.    During the applicable statute of limitations period, Plaintiff Turner purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

250.    L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when it was tested by an independent lab.

251.    Plaintiff purchased Defendant's Products for her personal use during the Class

Period in Carteret County, North Carolina.

252. Plaintiff began purchasing the Products on about January 1, 2016, and used them about three times a week until about January 1, 2020.

253. As a result of Defendants' misrepresentations and omissions, Plaintiff Turner purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

254. On information and belief, the Products purchased by Plaintiff Turner contained detectable levels of PFAS.

255. Plaintiff Turner would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using the Products since learning they contain PFAS.

256. Plaintiff Turner followed the instructions and applied the Products according to the instructions.

257. Plaintiff Turner was unaware that the Products contained detectable levels of PFAS.

258. Plaintiff Turner, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

259. The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Turner was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Turner would not have purchased if she had not been misled by Defendant.

260. If Plaintiff Turner or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Rebecca Vega**

261.    During the applicable statute of limitations period, Plaintiff Vega purchased Defendant's L'Oreal Voluminous Waterproof Mascara, which contained PFAS.

262.    L'Oreal's Voluminous Waterproof Mascara was found to contain PFAS when it was tested by an independent lab.

263.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Essex County, New Jersey.

264.    Plaintiff began purchasing the Products on about January 1, 2016, and used them about three times a week for over a year or more.

265.    As a result of Defendants' misrepresentations and omissions, Plaintiff Vega purchased the Products because she reasonably believed they were safe for use around, adjacent to, and near her eyes.

266.    On information and belief, the Products purchased by Plaintiff Vega contained detectable levels of PFAS.

267.    Plaintiff Vega would not have purchased the Products, or would have paid less for them, had she known that they contained dangerous PFAS. In fact, Plaintiff has stopped using the Products since learning they contain PFAS.

268.    Plaintiff Vega followed the instructions and applied the Products according to the instructions.

269.    Plaintiff Vega was unaware that the Products contained detectable levels of PFAS.

270.    Plaintiff Vega, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

271.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Vega was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Vega would not have purchased if she had not been misled

by Defendant.

272.    If Plaintiff Vega or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Sonia Cauchi**

273.    During the applicable statute of limitations period, Plaintiff Cauchi purchased Defendant's Maybelline Great Lash Waterproof Mascara and L'Oreal Voluminous Waterproof Mascara Products that contained PFAS.

274.    Maybelline Great Lash Waterproof Mascara and L'Oreal Voluminous Waterproof Mascara were found to contain PFAS when they were tested by an independent lab.

275.    Plaintiff Cauchi purchased Defendant's Products for her personal use during the Class Period in Queens, New York.

276.    Plaintiff Cauchi's most recent purchase was in 2022 from Target in Queens, New York.  Independent testing has confirmed that these Products contained PFAS.

277.    As a result of Defendants' misrepresentations and omissions, Plaintiff Cauchi purchased the Products because she reasonably believed it was safe for use around, adjacent to, and near her eyes.

278.    On information and belief, the Products purchased by Plaintiff Cauchi contained detectable levels of PFAS.

279.    Plaintiff Cauchi would not have purchased the Products, or would have paid less for it, had she known that it contained and/or had a material risk of containing dangerous PFAS. In fact, Plaintiff Cauchi has stopped using the Products since learning it contains PFAS.

280.    Plaintiff Cauchi followed the instructions and applied the Products according to the instructions.

281.    Plaintiff Cauchi was unaware that the Products contained detectable levels of

PFAS.

282.    Plaintiff Cauchi, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

283.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Cauchi was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Cauchi would not have purchased if she had not been misled by Defendant.

284.    If Plaintiff Cauchi or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

**Stephanie Branton**

285.    During the applicable statute of limitations period, Plaintiff Branton purchased Defendant's L'Oreal Voluminous Lash Paradise Waterproof Mascara and Maybelline Volum' Express the Falsies Waterproof Mascara Products that contained PFAS.

286.    L'Oreal Voluminous Lash Paradise Waterproof Mascara and Maybelline Volum' Express the Falsies Waterproof Mascara were found to contain PFAS when tested by an independent lab.

287.    Plaintiff purchased Defendant's Products for her personal use during the Class Period in Nassau County, New York.

288.    Plaintiff's most recent purchase was in 2022 from an online retailer.

289.    Plaintiff purchased the Products in Nassau County, New York and had the Products shipped to her home in Nassau County, New York.

290.    As a result of Defendants' misrepresentations and omissions, Plaintiff Branton purchased the Products because she reasonably believed it was safe for use around, adjacent to,

and near her eyes.

291.    On information and belief, the Products purchased by Plaintiff Branton contained detectable levels of PFAS.

292.    Plaintiff Branton would not have purchased the Products, or would have paid less for it, had she known that it contained and/or had a material risk of containing dangerous PFAS. In fact, Plaintiff Branton has stopped using the Products since learning it contains PFAS.

293.    Plaintiff Branton followed the instructions and applied the Products according to the instructions.

294.    Plaintiff Branton was unaware that the Products contained detectable levels of PFAS.

295.    Plaintiff Branton, like other reasonable consumers, reasonably relied on Defendant's packaging, labeling, ingredient list, and disclosures when deciding to purchase one of the Waterproof Mascara Products.

296.    The Waterproof Mascara Products were misleadingly advertised. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff Branton was injured by purchasing, at a premium price, the Waterproof Mascara Products that were not of the quality and safety promised and that Plaintiff Branton would not have purchased if she had not been misled by Defendant.

297.    If Plaintiff Branton or the members of the putative Class were to encounter the Waterproof Mascara Products in the future, they could not reasonably rely on the truthfulness of the packaging unless Defendant's packaging and labeling corrected the misleading packaging omission.

## VII.    DEFENDANT'S   PACKAGING   CLAIMS   MISLED   AND   DECEIVED CONSUMERS

298.    Defendant's packaging claimed the Waterproof Mascara Products were safe and did not contain harmful carcinogenic PFAS compounds. These misrepresentations and omissions

are misleading to consumers because the Waterproof Mascara Products do in fact contain PFAS.

299.    Reasonable consumers, including Plaintiffs and the Class, paid Defendant a price premium for the Waterproof Mascara Products because the consumers relied on the accuracy of the disclosures and statements on Defendant's packaging, labels, and ingredient list.

300.    Reasonable consumers, including Plaintiffs and the Class, considered the above packaging claims to be material to their decision to purchase the Waterproof Mascara Products.

301.    Defendant knew or should have known, yet failed to disclose, that the Waterproof Mascara Products contained PFAS, and thus did not conform to the packaging claims.

302.    Defendant also knew or should have known that the presence of PFAS were a material consideration to consumers like Plaintiffs and the Class when they purchased the Waterproof Mascara Products.

303.    A reasonable consumer would not have paid the price premium for the Products if they had known that the Waterproof Mascara Products contained PFAS.

304.    In fact, reasonable consumers, including Plaintiffs and the Class, would have refused to purchase the Waterproof Mascara Products entirely if they had known that the Products contained PFAS.

305.    As a result of Defendant's misleading packaging claims and omissions, consumers like Plaintiffs and the Class suffered substantial financial losses by paying premium prices for the Waterproof Mascara Products that did not conform to their packaging claims. Not only that, but Plaintiffs and Class Members have incurred costs to prematurely replace the product and costs to discontinue use of the product before its expiration.

## VIII.    CONSUMER RELIANCE WAS REASONABLE AND FORESEEABLE

306.    Plaintiffs and the Class reasonably relied upon Defendant's misleading packaging claims and omissions when making their decision to purchase the Waterproof Mascara Products.

307.    Any reasonable consumer would consider the packaging and labeling of a cosmetics product. At the time of purchase, Plaintiffs and the Class had no opportunity to discover

the truth about Defendant's omission of the presence of PFAS in the Waterproof Mascara Products.

308.    Consumers reasonably relied upon Defendant's misleading packaging claims as objective statements that communicated, represented, and advertised that the Waterproof Mascara Products had specific product characteristics.

309.    Defendant knew, or should have known, that Plaintiffs and the Class would rely on their misleading packaging claims. Defendant designed and had control over the Waterproof Mascara Products' packaging, including omitting information about the presence of PFAS, in order to target and induce consumers like Plaintiffs and the Class to purchase the Product at the advertised price.

310.    Plaintiffs and the Class are intended third-party beneficiaries of any implied warranty between L'Oreal and retailers. Retailers were not intended to be the ultimate consumers of the Waterproof Mascara Products as any implied warranty that exists was intended to benefit consumers.

## IX.    DEFENDANT'S KNOWLEDGE OF THE MISREPRESENTATIONS AND OMISSIONS

311.    Defendant had exclusive knowledge of the contents and formula of its Waterproof Mascara Products, including whether they contained PFAS.

312.    Defendant also had exclusive knowledge of its ingredient suppliers and could have obtained information from their suppliers about the contents of the ingredients, including whether they contained PFAS.

313.    Absent testing by a qualified lab, consumers like Plaintiffs and the Class were unable to determine or identify that Defendant's Waterproof Mascara Products contained PFAS given the Products' mislabeling and failure to disclose the presence of PFAS.

## X.    DEFENDANT ACTED NEGLIGENTLY AND/OR INTENTIONALLY TO MISLEAD CONSUMERS

314.    Defendant acted negligently and/or intentionally to deceive consumers, including Plaintiffs and the Class, through its misleading Waterproof Mascara Product packaging that did

not disclose the presence of PFAS in the Products.

315.    Defendant did so despite knowing about the presence of PFAS in the Waterproof Mascara Products, as well as knowing that PFAS could be eliminated from its Products. Defendant knew that consumers like Plaintiffs and the Class trusted and relied on Defendant to ensure that the Waterproof Mascara Products conformed to their packaging claims and did not contain undisclosed PFAS.

## XI.    TOLLING OF STATUTES OF LIMITATIONS

316.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the presence of PFAS in the Waterproof Mascara Products and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Class were deceived regarding the Waterproof Mascara Products and could not reasonably discover that they contained PFAS.

317.    Plaintiffs and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to expect that the Defendant was concealing the presence of PFAS in the Waterproof Mascara Products. As alleged herein, the presence of PFAS in the Waterproof Mascara Products was material to Plaintiffs and members of the Class at all relevant times. Within the time period of any applicable statute of limitations, Plaintiffs and members of the Class would not have discovered through the existence of reasonable diligence that the Waterproof Mascara Products contain PFAS.

318.    At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and the Class the true standard, quality, and grade of the Waterproof Mascara Products and to disclose the presence of PFAS due to its exclusive and superior knowledge of the contents and ingredient sourcing for the Waterproof Mascara Products.

319.    Defendant knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and members of the Class reasonably relied on Defendant's knowing, active, and affirmative concealment.

320.    For these reasons, all applicable statutes of limitation have been tolled based on the

discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statues of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

321.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the classes. This action satisfies the requirements set forth in Rule 23(a) and Rule 23(b)(3).

322.    Plaintiffs bring this action on behalf of the following class(es) (together referred to as the "Class"):

> **Nationwide Class:** All individuals in the United States who purchased the Waterproof Mascara Products from 2018 to the present; and/or
>
> **New York Subclass:** All individuals in the State of New York who purchased the Waterproof Mascara Products from 2018 to the present.
>
> **California Subclass:** All individuals in the State of California who purchased the Waterproof Mascara Products from 2018 to the present.
>
> **Iowa Subclass:** All individuals in the State of Iowa who purchased the Waterproof Mascara Products from 2018 to the present.
>
> **Michigan Subclass:** All individuals in the State of Michigan who purchased the Waterproof Mascara Products from 2016 to the present.
>
> **North Carolina Subclass:** All individuals in the State of North Carolina who purchased the Waterproof Mascara Products from 2018 to the present.
>
> **New Jersey Subclass:** All individuals in the State of New Jersey who purchased the Waterproof Mascara Products from 2016 to the present.

323.    Excluded from the Class are Defendant, its legal representatives, assigns and successors, and any entity in which Defendant has a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff. Claims for personal injury are specifically excluded from the Class.

324.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

325.    <u>Numerosity (Rule 23(a)(1))</u>: Although the actual size of the Class is uncertain,

Plaintiffs are informed and believe that the Class is comprised of at least thousands of purchasers of the Waterproof Mascara Products, making joinder impracticable. The disposition of the claims of the Class in a single action will provide substantial benefits to the parties and the Court.

326.    <u>Commonality (Rule 23(a)(2))</u>: Questions of law and fact common to Plaintiffs and the Class include, but are not limited to, the following:

*a.*    Whether Defendant owed a duty of care to Plaintiffs and the Class;

*b.*    Whether the Waterproof Mascara Products contained detectable levels of PFAS;

*c.*    Whether Defendant knew or should have known that the Waterproof Mascara Products contained detectable levels of PFAS not disclosed on the product label and/or packaging;

*d.*    Whether Defendant failed to test, or require its suppliers to test, the Waterproof Mascara Products and their ingredients for the presence of PFAS;

*e.*    Whether Defendant failed to disclose that the Waterproof Mascara Products contained PFAS;

*f.*    Whether Defendant wrongfully represented that the Waterproof Mascara Products were safe for use and did not include toxic PFAS substances;

*g.*    Whether Defendant wrongfully represented, and continues to represent, that the Waterproof Mascara Products are safe for use on eyes and high-quality;

*h.*    Whether reasonable consumers would consider that the Waterproof Mascara Products containing detectable levels of PFAS to be a material fact in purchasing the Waterproof Mascara Products;

*i.*    Whether Defendant continued to manufacture and sell the Waterproof Mascara Products despite knowing that they contain detectable levels of PFAS;

*j.*    Whether Defendant's omission of the presence of PFAS in the Waterproof Mascara Products was likely to mislead, deceive, confuse, or confound consumers acting reasonably;

k.    Whether Defendant violated New York law;

l.    Whether Defendant violated California law;

m.    Whether Defendant violated Iowa law;

n.    Whether Defendant violated Michigan law;

o.    Whether Defendant violated North Carolina law;

p.  Whether Defendant violated New Jersey law;

q.  Whether Defendant engaged in deceptive acts and practices;

r.  Whether Defendant engaged in false advertising;

s.  Whether Defendant unjustly enriched itself at consumers' expense;

t.  Whether Plaintiffs and the Class are entitled to actual, statutory, and treble damages; and

u.  Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief.

327.  <u>Typicality (Rule 23(a)(3))</u>: The claims of the representative Plaintiffs are typical of the claims of members of the Class, in that the representative Plaintiffs, like all members of the Class, purchased the Waterproof Mascara Products from Defendant without knowing that it contained detectable levels of PFAS and, if Plaintiffs, like all members of the Class, had known that information, she would not have purchased the products or would have paid less for them. Thus, the representative Plaintiffs, like all members of the Class, have suffered a common injury. The factual basis of Defendant's misconduct is common to all members of the Class.

328.  <u>Adequacy (Rule 23(a)(4))</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving mislabeling and false advertising, product liability, and violation of consumer protection statutes. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

329.  <u>Predominance of Common Questions (Rule 23(b)(3))</u>: Common questions of law and fact predominate over any questions involving individualized analysis. There are no fundamental questions of fact or law that are not common to members of the Class. The undisclosed presence of PFAS in the Waterproof Cosmetics Products is a common question, as is the Defendant's knowledge regarding the presence of detectable levels of PFAS in its Waterproof Mascara Products and Defendant's unform omission to members of the Class of this material fact.

Common questions of law include whether Defendant's conduct violates state consumer protection statutes and other laws, and the Class members' entitlement to damages and remedies.

330.    <u>Superiority (Rule 23(b)(3))</u>: Plaintiffs and members of the Class have suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy. Most members of the Class likely would find the cost of litigating their individual claims to be prohibitive and will have no adequate remedy at law. Thus, absent a class action, members of the Class will continue to incur damages and Defendant's misconduct will proceed without remedy. Class treatment of common questions of fact and law is superior to multiple individual actions or piecemeal litigation because it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication. There is no impediment to the management of this action as a class action because the questions of fact and law are virtually identical for Plaintiffs and all Class members.

331.    <u>Injunctive Relief (Rule 23(b)(2))</u>: Defendant has engaged in, and continues to engage in, business practices which are unfair and fraudulent by, among other things, failing to disclose the material fact that the Waterproof Mascara Products contain detectable levels of PFAS. Plaintiffs seek class-wide injunctive relief on grounds consistent with the standards articulated in Rule 23(b)(2) that establish final injunctive relief as an appropriate class-wide remedy, in that Defendant continues to manufacture, market, and sell the Waterproof Mascara Products and omit material facts. The injuries suffered by Plaintiffs and the Class as a result of Defendant's actions are ongoing.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of New York Consumer Law for Deceptive Acts and Practices
N.Y. Gen. Bus. Law § 349
(On Behalf of Plaintiffs and the Nationwide Class
or, in the Alternative, the New York Subclass)**

332.    Plaintiffs incorporate by reference all preceding allegations contained in this

Complaint.

333.    New York General Business Law ("NYGBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

334.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 349. The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 349, and the deception occurred and originated in part within New York State.

335.    Defendant's Waterproof Mascara Products contains PFAS—a fact it omitted to disclose—and Defendant misrepresented that its Products were safe for use on eyes. Defendant knew or should have known that its Waterproof Mascara Products should not contain PFAS and that by manufacturing and providing for commercial sale Waterproof Mascara Products containing PFAS, Plaintiffs and Class members were not getting safe products to use on a sensitive part of the face, the eye.

336.    Plaintiffs and Class members would not have purchased the Waterproof Mascara Products at issue had they known the truth about the presence of PFAS. There is no other use for Defendant's tainted Waterproof Mascara Products.

337.    Defendant violated the NYGBL § 349 by designing, manufacturing, and selling Waterproof Mascara Products containing PFAS and by failing to properly represent, both by affirmative conduct and by omission, the actual contents of its Waterproof Mascara Products.

338.    If Defendant had not sold Waterproof Mascara Products containing undisclosed PFAS, Plaintiffs and Class members would not have suffered the extent of damages caused by Defendant's sales.

339.    Defendant's practices, acts, policies, and course of conduct violate NYGBL § 349 in that, among others things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiffs and Class members at the time they purchased the Waterproof Mascara Products, including the fact that Defendant's Products contained PFAS, and

that Defendant failed to disclose and give timely warnings or notices regarding the presence of PFAS in its Products that were purchased by Plaintiffs and Class members.

340.    The conduct alleged herein constitutes an unconscionable business practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence of detectable levels of PFAS in its Waterproof Mascara Products.

341.    Members of the public, including Plaintiffs and Class members, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

342.    Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing Waterproof Mascara Products. Said acts and practices are material. The sales of Defendant's Waterproof Mascara Products in New York, through such means occurring in New York, were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 349.

343.    To this day, Defendant continues to engage in unlawful practices in violation of the NYGBL § 349.  Defendant continues to conceal the defective and harmful nature of the Waterproof Mascara Products and have failed to disclose, on inquiry from Plaintiffs and Class Members, the true nature of the Waterproof Mascara Products, including that they contain PFAS.

344.    As a direct and proximate cause of Defendant's conduct, Plaintiffs and Class members suffered actual damages as alleged above.

345.    In addition to or in lieu of actual damages, because of the injury, Plaintiffs and the Class members seek statutory and treble damages for each injury and violation which has occurred.

346.    Plaintiffs also seek injunctive relief for Defendant to refrain from the continued advertising of Waterproof Mascara Products that omits material facts, including that the Waterproof Mascara Products contain PFAS. Plaintiffs further seek injunctive relief forcing Defendant to replace all Waterproof Mascara Products for Class Members with a non-toxic mascara.

## SECOND CAUSE OF ACTION

**Violations of New York Consumer Law for Deceptive Acts and Practices
(False Advertising)
N.Y. Gen. Bus. Law § 350
(On Behalf of Plaintiffs and the Nationwide Class
or, in the Alternative, the New York Subclass)**

347.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

348.    NYGBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service in the State of New York.

349.    By reason of the conduct alleged herein, Defendant engaged in material and misleading labeling and advertising of its Waterproof Mascara Products by statements and omission within the meaning of the NYGBL § 350. The false advertising occurred in part within New York State.

350.    Defendant's Waterproof Mascara Products contains PFAS—a fact it omitted to disclose—and Defendant misrepresented that its Products were safe for use on eyes. Defendant knew or should have known that its Waterproof Mascara Products should not contain PFAS and that by manufacturing and providing for commercial sale Waterproof Mascara Products containing PFAS, Plaintiffs and Class members were not getting safe products to use on a sensitive part of the face, the eye.

351.    Plaintiffs and Class members would not have purchased the Waterproof Mascara Products at issue had they known the truth about the presence of PFAS. There is no other use for Defendant's tainted Products.

352.    Defendant violated the NYGBL § 350 by designing, manufacturing, marketing, and selling Waterproof Mascara Products containing PFAS and failing to properly represent, both by affirmative conduct and by omission, the actual contents of its Waterproof Mascara Products.

353.    If Defendant had not sold Waterproof Mascara Products containing undisclosed PFAS, Plaintiffs and Class members would not have suffered the extent of damages caused by

Defendant's sales.

354. Defendant's advertisements and labels for its Waterproof Mascara Products violate NYGBL § 350 in that, among others things, Defendant actively and knowingly misrepresented or omitted disclosure of material information, including the fact that Defendant's Products contained PFAS, on the labels and advertisements, knowing that Plaintiffs and Class members would see and rely on the labels at the time they purchased the Waterproof Mascara Products, and that Defendant failed to disclose and give timely warnings or notices regarding the presence of PFAS in its Waterproof Mascara Products that were purchased by Plaintiffs and Class members.

355. The conduct alleged herein constitutes an unconscionable business practice in that Defendant has, by the use of false statements and/or material omissions in its labels and advertisements, failed to properly represent and/or concealed the presence of detectable levels of PFAS in its Waterproof Mascara Products.

356. Members of the public, including Plaintiffs and Class members, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

357. Such material and misleading advertisements and labels designed and disseminated by Defendant are and were likely to mislead a reasonable consumer purchasing Waterproof Mascara Products. The sales of Defendant's Waterproof Mascara Products in New York, through such means occurring in New York, were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 350.

358. To this day, Defendant continues to engage in unlawful misleading advertising in violation of the NYGBL § 350. Defendant continues to conceal the defective nature of the Waterproof Mascara Products and has failed to disclose, on inquiry from Plaintiffs and Class Members, the true nature of the Waterproof Mascara Products, including that it contains PFAS.

359. As a direct and proximate cause of Defendant's conduct, Plaintiffs and Class members suffered actual damages as alleged above.

360. In addition to or in lieu of actual damages, because of the injury, Plaintiffs and the

Class members seek statutory and treble damages for each injury and violation which has occurred.

361.    Plaintiffs also seek injunctive relief for Defendant to refrain from the continued advertising of Waterproof Mascara Products that omits and misrepresents material facts, including that the Waterproof Mascara Products contain PFAS. Plaintiffs further seek injunctive relief forcing Defendant to replace all Waterproof Mascara Products for Class Members.

### THIRD CAUSE OF ACTION

**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class**
**or, in the Alternative, the New York Subclass, California Subclass, the Iowa Subclass, the**
**Michigan Subclass, the North Carolina Subclass, and the New Jersey Subclass)**

362.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

363.    In connection with its sale of Waterproof Mascara Products, by and through statements in labels, packaging, and ingredient lists, and other written materials intended for consumers and the general public, Defendant made certain express affirmations of fact and/or promises relating to its Waterproof Mascara Products to Plaintiffs and the Class, as alleged herein, including that such Waterproof Mascara Products were safe to use on eyes and fit to be used for their intended purpose. These express affirmations of fact and/or promises include ingredient lists and labels that purport to attest to the safety of the Products but fail to include that the Waterproof Mascara Products contained PFAS.

364.    Defendant advertised, labeled, marketed, and promoted the Waterproof Mascara Products with such express affirmations of fact and/or promises in such a way as to induce Plaintiffs and Class Members to purchase and use the Waterproof Mascara Products, thereby making an express warranty that the Waterproof Mascara Products would conform to the representations of being safe.

365.    Defendant's affirmations of fact and/or promises about the Waterproof Mascara Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the

buyer, which related to the goods and became part of the basis of the bargain.

366.    Despite the express warranties Defendant created with respect to the Waterproof Mascara Products, Defendant delivered Waterproof Mascara Products to Plaintiffs and the Class that did not conform to Defendant's express warranties in that such Waterproof Mascara Products were defective, dangerous, and unfit for use, did not contain labels adequately representing the nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Defendant breached the express warranties by representing through its labeling, advertising, and marketing materials that its Waterproof Mascara Products were safe, and intentionally withheld information about the contents containing detectable levels of PFAS and the risks associated with use of the carcinogenic Products on the eyes.

367.    Plaintiffs and Class members relied on Defendant's express promises and representations that the Waterproof Mascara Products were safe to use on eyes and fit to be used for their intended purpose as contained on the labels, packaging, and ingredient lists.

368.    Defendant had sole access to material facts concerning the contents of its Waterproof Mascara Products and the nature of the risks associated with the use of the Products, as Defendant expressly stated on their labels the safety of the Products, and knew that consumers and purchasers, such as Plaintiffs and Class members, could not have reasonably discovered that the statements expressly included in Waterproof Mascara Products' labels were inadequate and inaccurate.

369.    Plaintiffs and each member of the Class have had sufficient direct dealings with Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant and Plaintiffs and each member of the Class.

370.    As a direct and proximate result of Defendant's breaches of express warranties, as alleged herein, Plaintiffs and the Class sustained economic loss in an amount to be proven at trial. The Waterproof Mascara Products contained PFAS, which will require Plaintiffs and Class Members to incur costs to prematurely replace the product and costs to discontinue use of the

product before its expiration.

371.     As a result of Defendant's breaches of express warranties, as alleged herein, Plaintiffs and the Class seek an order awarding compensatory damages and any other just and proper relief available under the law.

## FOURTH CAUSE OF ACTION

**Breach of Implied Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class**
**Or, in the Alternative, the New York Subclass, California Subclass, the Iowa Subclass, the Michigan Subclass, the North Carolina Subclass, and the New Jersey Subclass)**

372.     Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

373.     At all relevant times, Defendant was a merchant of Waterproof Mascara Products that were sold to Plaintiffs and Class members and was in the business of marketing, promoting, and selling such Products to the consuming public. Defendant designed, developed, and sold the Waterproof Mascara Products knowing that Plaintiffs and Class members would use it.

374.     Each Waterproof Mascara Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. Defendant expected the consuming public, including Plaintiffs and Class members, to use the Waterproof Mascara Products and such use was reasonably foreseeable. And Plaintiffs and Class members expected the Waterproof Mascara Products to be useable and to perform in a manner consistent with their packaging and labeling.

375.     Defendant breached its implied warranty of merchantability because its Waterproof Mascara Products were not in merchantable condition when sold because they contain or have a material risk of containing dangerous PFAS.

376.     Defendant's Waterproof Mascara Products are not fit for the ordinary purpose for which they were sold because they contain or have a material risk of containing dangerous PFAS.

377.     Defendant did not properly disclaim the warranty of merchantability and fitness for

a particular purpose.

378.    Plaintiffs and Class members were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Waterproof Mascara Products, they would not have purchased such Products.

379.    As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class seek an order awarding compensatory damages and any other just and proper relief available under the law.

## FIFTH CAUSE OF ACTION

**Fraudulent Concealment**
**(On Behalf of Plaintiffs and the Nationwide Class**
**or, in the Alternative, the New York Subclass, California Subclass, the Iowa Subclass, the**
**Michigan Subclass, and the New Jersey Subclass)**

380.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

381.    Defendant concealed and failed to disclose on the Products' packaging and labeling the material fact the Products contained or risked containing PFAS, and that the Products were not safe or healthy for use.

382.    As discussed at great length above, it has been known since the 1950's that PFAS are harmful chemicals to humans, animals, and the environment.  The EPA, CDC and many other groups and publications have further reported on the potential risks and dangers of PFAS. Consequently, Defendant knew or should have known that PFAS are dangerous, and concealing this known fact is detrimental to the consumer.

383.    Defendant has a duty to disclose that the Products contained or risked containing PFAS; however, Defendant did not make this disclosure.

384.    Plaintiffs and the Class all paid a premium for the Products based upon the way it was represented, which did not include the inclusion of PFAS, and products that are tainted with

PFAS are not worth a premium to a reasonable consumer.

385.    Defendant had superior knowledge or means of knowledge available to them and knew that Plaintiffs and Class Members would rely upon the representations and omissions of Defendant regarding the quality and ingredients of its Products.  Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains PFAS, especially at the point of sale.

386.    Defendant's concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies.  Consumers such as Plaintiffs and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy.  Defendant knows that if it had not omitted that the Products contained or risked containing PFAS, then Plaintiffs and the Class would not have agreed to pay a premium price for the Products, or wouldn't have purchased the Products at all; however, Defendant wanted to increase sales and profits.

387.    Defendant's concealment misled Plaintiffs and the Class as to the true nature of what they were buying and putting onto and into their bodies.

388.    Defendant fraudulently concealed that the Products contained or risked containing PFAS.  Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class**
**or, in the Alternative, the New York Subclass, California Subclass, the Iowa Subclass, the**
**Michigan Subclass, and the New Jersey Subclass)**

389.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

390.    As the intended and expected result of its conscious wrongdoing alleged herein, Defendant has profited and benefited from Plaintiffs' and Class members' purchases of the Waterproof Mascara Products.  Plaintiffs' and Class members' payments for the Waterproof

Mascara Products flowed to Defendant.

391. Defendant voluntarily accepted and retained these profits and benefits derived from Plaintiffs and the Class, with full knowledge and awareness that, as a result of its misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant and that Plaintiffs and the Class, as reasonable consumers, expected for a product applied to the eye.

392. If Plaintiffs and Class members knew the Defendant's Waterproof Mascara Products were not safe and contained PFAS as alleged herein, they would not have purchased Defendant's Waterproof Mascara Products.

393. Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to its customers at the expense of Plaintiffs and the Class.

394. Defendant profited from Plaintiffs' purchases and used Plaintiffs and Class members' monetary payments for business purposes. Defendant's retention of these profits and benefits is inequitable and against good conscience. Principles of equity and good conscience preclude Defendant from retaining these profits and benefits.

395. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class suffered injury and seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## SEVENTH CAUSE OF ACTION
### Violation of California Consumers Legal Remedis Act ("CLRA")
### (On Behalf of Plaintiff Davenport and the California Subclass)

396. Plaintiff incorporates by reference all preceding allegations contained in the Complaint.

397. Defendant is a "person" as defined by California Civil Code section 1761(c).

398. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of California Civil Code sections 1770(a)(5), (a)(7), and (a)(9) when Defendant failed to

Case 1:22-cv-01989-JPC   Document 25   Filed 08/23/22   Page 60 of 75

disclose that its Waterproof Mascara contained PFAS and by misrepresenting that it was safe for use on eyes.

399.    Plaintiff and Class Members relied on Defendant's packaging representations and omissions.

400.    Defendant's deceptive practices were specifically designed to induce Plaintiff and Class Members to purchase the Waterproof Mascara Products. Defendant engaged in marketing efforts as detailed in this complaint, to reach Class Members, to persuade them to purchase Waterproof Mascara developed and marketed by Defendant.

401.    To this day, Defendant continues to engage in unlawful practices in violation of the CLRA. Defendant continues to conceal the defective nature of the Waterproof Mascara Products and have failed to disclose, on inquiry from Plaintiff and Class Members, the true nature of the Waterproof Mascara Products including that they contain PFAS.

402.    Plaintiff served Defendant with notice of its CLRA violations by serving notice on February 1, 2021.

403.    Defendant did not remedy its violations of the CLRA after receiving Plaintiff's CLRA notice.

404.    As a direct and proximate result of Defendant's actions, Plaintiff and the California Subclass suffered injury and seek actual damages and restitution. Plaintiff also seeks a permanent injunction be issued against Defendant to refrain from continued advertising of Waterproof Mascara that omits material facts about product, including that it contains PFAS. Plaintiff further seeks injunctive relief forcing Defendant to replace and all Waterproof Mascara Products for Class Members, plus costs and attorneys' fees pursuant to California Civil Code section 1780(d).

### EIGHTH CAUSE OF ACTION
**Violation of California Unfair Competition Law- Unlawful Business Practices**
**(On Behalf of Plaintiff Davenport and the California Subclass)**

405.    Plaintiff incorporates by reference all preceding allegations contained in this Complaint.

406.    California Business and Professions Code section 17200 *et seq*. prohibits acts of

60

unfair competition, which includes unlawful business practices.

407.    Defendant engaged in unlawful business practices in failing to disclose its Waterproof Mascara Products contain PFAS.

408.    Defendant's deceptive practices constitute an unlawful business practice in that the practices were specifically designed to induce Plaintiff and Class Members, to purchase and use the Waterproof Mascara Products.

409.    To this day, Defendant has engaged in and continued to engage in unlawful business practices by concealing the true nature of the Waterproof Mascara Products. Defendant has knowingly misrepresented to Class Members the Waterproof Mascara Products' qualities and characteristics.

410.    As a direct and proximate cause of Defendant's unfair and unlawful methods of competition and unfair, deceptive, or unlawful acts or practices, Plaintiff and Class Members have suffered actual damages. Plaintiff and Class Members must incur costs to replace the Waterproof Mascara Products and they lose the value of the product as they discontinue use.

411.    As a proximate result of their unlawful, unfair, or fraudulent practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiff and California Subclass Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

412.    Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Defendant, for restitution and/or disgorgement of funds paid to Defendant by Plaintiff and Class Members to purchase the Waterproof Mascara Products or in the form of replacement of the product.

## NINTH CAUSE OF ACTION

**Violation of California Unfair Competition Law- Unlawful Business Practices**
**(On Behalf of Plaintiff Davenport and the California Subclass)**

413.    Plaintiff incorporates by reference all preceding allegations contained in this

Complaint.

414.     California Business and Professions Code section 17200 *et seq*. prohibits acts of unfair competition, which includes unlawful business practices.

415.     Defendant engaged in unlawful business practices in failing to disclose its Waterproof Mascara Products contained PFAS.

416.     Defendant's deceptive practices constitute an unlawful business practice in that the practices were specifically designed to induce Plaintiff, Class Members, to purchase and use the Waterproof Mascara Products.

417.     To this day, Defendant has engaged in and continued to engage in unlawful business practices by concealing the true nature of the Waterproof Mascara Products. Defendant has knowingly misrepresented to Class Members the Waterproof Mascara Products' qualities and characteristics.

418.     As a direct and proximate cause of Defendant's unfair and unlawful methods of competition and unfair, deceptive, or unlawful acts or practices, Plaintiff and Class Members have suffered actual damages. Plaintiff and Class Members must incur costs to replace the Waterproof Mascara Products and they lose the value of the product as they discontinue use.

419.     As a proximate result of their unlawful, unfair, or fraudulent practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiff and Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

420.     Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Defendant, for restitution and/or disgorgement of funds paid to Defendant by Plaintiff and Class Members to purchase the Waterproof Mascara Products or in the form of replacement of the product.

## <u>TENTH CAUSE OF ACTION</u>

**Violation of The Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.1, *et seq*.**
**(On Behalf of Plaintiff Trembly and the Iowa Subclass)**

421.     Plaintiff Trembly (For the purposes of this count, "Plaintiff") incorporates by

reference all preceding allegations contained in this Complaint.

422.    Plaintiff asserts this claim on behalf of herself and the Iowa Subclass (for the purposes this count, "The Class").

423.    Defendant is a "person" as defined under Iowa Code § 714H.2(7).

424.    Plaintiff and Class Members are "consumers" within the meaning of the Iowa Code § 714H.2(3).

425.    Defendant participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), Iowa Code § 714H.1, *et seq.*, as described herein.

426.    Defendant's Waterproof Mascara Products contains PFAS—a fact it omitted to disclose—and Defendant misrepresented that its Products were safe for use on eyes. Defendant knew or should have known that its Waterproof Mascara Products should not contain PFAS and that by manufacturing and providing for commercial sale Waterproof Mascara Products containing PFAS, Plaintiffs and Class members were not getting safe products to use on a sensitive part of the face, the eye.

427.    Plaintiffs and Class members would not have purchased the Waterproof Mascara Products at issue had they known the truth about the presence of PFAS. There is no other use for Defendant's tainted Waterproof Mascara Products.

428.    In the course of Defendant's daily business, it willfully failed to disclose and actively concealed that its Waterproof Mascara Products contained PFAS.

429.    In purchasing the Waterproof Mascara Products, Plaintiffs and other Class Members were deceived by Defendant's failure to disclose the presence of PFAS in the Waterproof Mascara Products.

430.    Defendant's unfair and deceptive acts or practices occurred repeatedly in its course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to Plaintiff and Class Members.

431.    Plaintiff and other Class Members reasonably relied on Defendant's false

misrepresentations. They had no way of knowing that Defendant's representations were false and misleading. Plaintiff and Class Members could not determine the falsehood of Defendant's claims on their own.

432. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

433. The facts Defendant concealed from Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Waterproof Mascara Products. Moreover, a reasonable consumer would consider the presence of PFAS in cosmetic products to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiffs and Class Members known that the Waterproof Mascara Products contained PFAS, they would not have purchased the Products, or would have paid less for them.

434. Defendant intentionally and knowingly misrepresented material facts regarding the Waterproof Mascara Products with an intent to mislead Plaintiff and Class Members.

435. Defendant knew or should have known that its conduct violated the Iowa CPA.

436. Defendant owed Plaintiff and Class Members a duty to disclose the truth about the presence of PFAS in the Waterproof Mascara Products because it posseed exclusive knowledge that the Products contained PFAS, intentionally concealed this fact from Plaintiff and the Class, and made incomplete representations regarding the ingredients, quality, and safety of the Waterproof Mascara Products while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

437. Defendant had a duty to disclose the presence of PFAS in the Waterproof Mascara Products because Plaintiff and other Class Members relied on Defendant's material representations that the Products were safe, environmentally friendly, and did not contain PFAS.

438. As a direct and proximate result of Defendant's violations of the Iowa CFA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damages in the form of overpayments. If Defendant had not sold Waterproof Mascara Products containing undisclosed

PFAS, Plaintiffs and Class members would not have suffered the extent of damages caused by Defendant's sales

439.    Defendant's conduct proximately caused injuries to Plaintiff and other Class Members, because they overpaid for their Waterproof Mascara Products and did not receive the benefit of their bargain.   These injuries are a direct and natural consequence of Defendant's misrepresentations and omissions.

440.    Defendant's violations present a continuing risk to the general public.   Defendant's unlawful acts and practices described in this Complaint affect the public interest.

441.    Plaintiff and Class Members were injured by Defendant's unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa Code. Because Defendant's conduct was committed willfully, Plaintiff seeks treble damages as provide in Iowa Code § 714H.5(4).

442.    Plaintiff also seeks court costs and attorneys' fees as provide in Iowa Code § 714H.5(2).

## ELEVENTH CAUSE OF ACTION

**Violation of The Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, *et seq*.**
**(On Behalf of Plaintiff Simmons and the Michigan Subclass)**

443.    Plaintiff Simmons (For the purposes of this count, "Plaintiff") incorporates by reference all preceding allegations contained in this Complaint.

444.    Plaintiff asserts this claim on behalf of herself and the Michigan Subclass (for the purposes this count, "The Class").

445.    Plaintiff and Class Members are "persons" as defined under Mich. Comp. Laws § 445.902(1)(d).

446.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commers," including "[r]epresenting that goods or services have . . . characteristics [or] ingredients . . . that they do not have," "[r]epresenting that goods or services are of a particular standard . . . if they are

65

of another," "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," [m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is," and "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws. § 445.903(1).

447.    Defendant's Waterproof Mascara Products contains PFAS—a fact it omitted to disclose—and Defendant misrepresented that its Products were safe for use on eyes. Defendant knew or should have known that its Waterproof Mascara Products should not contain PFAS and that by manufacturing and providing for commercial sale Waterproof Mascara Products containing PFAS, Plaintiffs and Class members were not getting safe products to use on a sensitive part of the face, the eye.

448.    Plaintiffs and Class members would not have purchased the Waterproof Mascara Products at issue had they known the truth about the presence of PFAS. There is no other use for Defendant's tainted Waterproof Mascara Products.

449.    In the course of its business, Defendant willfully failed to disclose and actively concealed that the Waterproof Mascara Products contained PFAS.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices including representing that the Waterproof Mascara Products have characteristics or ingredients that they do not have and  that they are of a particular standard when they are of another; failed to reveal a material fact, the omission of which tends to deceive the consumer and which cannot be reasonably known to the consumer; made a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failed to reveal material facts in light of representations made in a positive manner.

450.    In purchasing the Waterproof Mascara Products, Plaintiffs and other Class Members were deceived by Defendant's failure to disclose the presence of PFAS in the Waterproof

Mascara Products.

451.    Plaintiff and other Class Members reasonably relied on Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and misleading.  Plaintiff and Class Members could not determine the falsehood of Defendant's claims on their own.

452.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

453.    Defendant's unfair and deceptive acts and practice were likely to and did deceive reasonable consumers, including Plaintiff and Class Members.

454.    Defendant intentionally and knowingly misrepresented material facts regarding the Waterproof Mascara Products with an intent to mislead Plaintiff and Class Members.

455.    Defendant knew or should have known that its conduct violated the Michigan CPA.

456.    Defendant owed Plaintiff and Class Members a duty to disclose the truth about the presence of PFAS in the Waterproof Mascara Products because it possessed exclusive knowledge that the Products contained PFAS, intentionally concealed this fact from Plaintiff and the Class, and made incomplete representations regarding the ingredients, quality, and safety of the Waterproof Mascara Products while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

457.    Defendant had a duty to disclose the presence of PFAS in the Waterproof Mascara Products because Plaintiff and other Class Members relied on Defendant's material representations that the Products were safe, environmentally friendly, and did not contain PFAS.

458.    facts Defendant concealed from Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Waterproof Mascara Products. Moreover, a reasonable consumer would consider the presence of PFAS in cosmetic products to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiffs and Class Members known that the Waterproof Mascara Products

contained PFAS, they would not have purchased the Products, or would have paid less for them.

459.    As a direct and proximate result of Defendant's violations of the Michigan CPA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damages in the form of overpayments.  If Defendant had not sold Waterproof Mascara Products containing undisclosed PFAS, Plaintiffs and Class members would not have suffered the extent of damages caused by Defendant's sales.

460.    Defendant's violations present a continuing risk to the general public.  Defendant's unlawful acts and practices described in this Complaint affect the public interest.

461.    Plaintiff seeks monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Class Member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.  Plaintiff also seeks punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights of others. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## TWELFTH CAUSE OF ACTION

**Violation of The North Carolina Unfair and Deceptive Acts and Practices Act, N.C. Gen. Stat.  § 75-1.1, *et seq*.**
**(On Behalf of Plaintiff Turner and the North Carolina Subclass)**

462.    Plaintiff Turner (For the purposes of this count, "Plaintiff") incorporates by reference all preceding allegations contained in this Complaint.

463.    Plaintiff asserts this claim on behalf of herself and the North Carolina Subclass (for the purposes this count, "The Class").

464.    Defendant engaged in "commerce" within the meaning of N.C. Gen. Stat.  § 75-1.1(b).

465.    The North Carolina Unfair and Deceptive Acts and Practices Act (the "North Carolina UDTPA") broadly prohibits "unfair or deceptive acts or practices in or affecting

commerce." . N.C. Gen. Stat. § 75-1.1(a).  In the course of Defendant's business, it willfully failed to disclose and actively concealed that the Waterproof Mascara Products contained PFAS. Accordingly, Defendant engaged in unfair and deceptive trade practices because its actions (a) had the capacity or tendency to deceive, (2) offend public policy, (3) are immoral, unethical, oppressive or unscrupulous, or (4) cause substantial injury to consumers.

466.   Defendant's Waterproof Mascara Products contains PFAS—a fact it omitted to disclose—and Defendant misrepresented that its Products were safe for use on eyes. Defendant knew or should have known that its Waterproof Mascara Products should not contain PFAS and that by manufacturing and providing for commercial sale Waterproof Mascara Products containing PFAS, Plaintiffs and Class members were not getting safe products to use on a sensitive part of the face, the eye.

467.   Plaintiffs and Class members would not have purchased the Waterproof Mascara Products at issue had they known the truth about the presence of PFAS. There is no other use for Defendant's tainted Waterproof Mascara Products.

468.   By designing, manufacturing, and selling Waterproof Mascara Products containing PFAS and by failing to properly represent, both by affirmative conduct and by omission, the actual contents of its Waterproof Mascara Products, Defendant deceived Plaintiff and other Class members, who purchased the Products under the belief that they were free of PFAS.

469.   Plaintiff and other Class Members reasonably relied upon Defendant's false representations.  They had no way of knowing that Defendant's misrepresentations were false and gravely misleading.  Plaintiff and Class Members could not discover the presence of PFAS in the Waterproof Mascara Products on their own.

470.   Defendant's misrepresentations and failure to disclose were likely to and did deceive reasonable consumers, including Plaintiff and Class Members.

471.   Defendant intentionally and knowingly misrepresented material facts regarding the Waterproof Mascara Products with an intent to mislead Plaintiff and the Class.

472.   Defendant knew or should have known that its conduct violated the North Carolina

UDTPA.

473.    Defendant owed Plaintiff and the Class a duty to disclose the truth about the presence of PFAS in the Waterproof Mascara Products, because Defendant possessed exclusive knowledge of the presence of PFAS in the Waterproof Mascara Products, intentionally concealed this fact from Plaintiff and the Class, and made incomplete representations about the safety, environmental friendliness, and contents of the Products, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

474.    Defendant had a duty to disclose the presence of PFAS in the Waterproof Mascara Products because Plaintiff and other Class Members relied on Defendant's material misrepresentations that the Products were safe, environmentally friendly, and did not contain PFAS.

475.    Defendant's conduct proximately caused injuries to Plaintiff and other Class Members.

476.    As a direct and proximate result of Defendant's violations of the North Carolina UDTPA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damages in the form of overpayments.  If Defendant had not sold Waterproof Mascara Products containing undisclosed PFAS, Plaintiffs and Class members would not have suffered the extent of damages caused by Defendant's sales.

477.    Defendant's violations present a continuing risk to Plaintiff and the general public. Defendant's unlawful acts and practices affect the public interest.

478.    Plaintiff and the Class seek treble damages, court costs, attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16

479.    Plaintiff and the Class also seek punitive damages because Defendant's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

### THIRTEENTH CAUSE OF ACTION

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
#### (N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)
#### (On behalf of Plaintiffs Vega and Ruggiero and the New Jersey Subclass)

480.    Plaintiffs Vega and Ruggiero (for purposes of this count, "Plaintiffs") incorporate by reference all preceding allegations contained in this Complaint.

481.    Plaintiffs assert this claim on behalf of themselves and the New Jersey Subclass.

482.    Defendant and Plaintiff and the Class Members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

483.    Defendant engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

484.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. ("N.J. CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

485.    Defendant's Waterproof Mascara Products contains PFAS—a fact it omitted to disclose—and Defendant misrepresented that its Products were safe for use on eyes. Defendant knew or should have known that its Waterproof Mascara Products should not contain PFAS and that by manufacturing and providing for commercial sale Waterproof Mascara Products containing PFAS, Plaintiffs and Class members were not getting safe products to use on a sensitive part of the face, the eye.

486.    Plaintiffs and Class members would not have purchased the Waterproof Mascara Products at issue had they known the truth about the presence of PFAS. There is no other use for Defendant's tainted Waterproof Mascara Products.

487.    Defendant's conduct proximately caused injuries to Plaintiffs and other Class Members.

488.    designing, manufacturing, and selling Waterproof Mascara Products containing PFAS and by failing to properly represent, both by affirmative conduct and by omission, the actual

contents of its Waterproof Mascara Products, Defendant intentionally, affirmatively, and knowingly misrepresented material facts regarding the presence of PFAS in the Waterproof Mascara Products with intent to mislead Plaintiffs and other Class Members.

489.    Defendant's behavior was unconscionable and deceptive because it failed to disclose the presence of PFAS to consumers, including Plaintiffs and Class Members, despite knowing the health risks created by PFAS.

490.    Defendant knew that its products contained PFAS prior to sale, but intentionally knowingly and intentionally failed to disclose material facts regarding the presence of PFAS in the Waterproof Mascara Products to Plaintiffs and Class Members.

491.    Defendant knew or should have known that its conduct violated the New Jersey CFA.

492.    Plaintiffs and other Class Members suffered ascertainable loss, injuries, and actual damages as a result of Defendant's conduct, because Plaintiffs and other Class Members overpaid for their Waterproof Mascara Products and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendant's misrepresentations, fraud, deceptive practices, and omissions. If Defendant had not sold Waterproof Mascara Products containing undisclosed PFAS, Plaintiffs and Class members would not have suffered the extent of damages caused by Defendant's sales

493.    Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and the other Class Members seek an order enjoining Defendants' unlawful conduct and other injunctive relief, actual damages, treble damages, attorneys' fees, costs, and any other just and proper relief available under the New Jersey CPA.

494.    Plaintiff also seeks injunctive relief for Defendant to refrain from the continued advertising of Waterproof Mascara Products that omits material facts, including that the Waterproof Mascara Products contain PFAS. Plaintiffs further seek injunctive relief forcing Defendant to replace all Waterproof Mascara Products for Class Members with a non-toxic

mascara.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendant and in favor of Plaintiffs, and to award the following relief:

a) Certification of the Class with Plaintiffs appointed as class representatives and the undersigned appointed as Class Counsel;

b) Find that Defendant engaged in the unlawful conduct as alleged herein and enjoin Defendant from engaging in such conduct;

c) Enter a monetary judgment in favor of Plaintiffs and the Class to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, punitive damages, and penalties where appropriate;

d) Injunctive relief requiring Defendant to replace all Waterproof Mascara Products owned by the Class, and enjoining Defendant from continuing to mislabel Waterproof Mascara Products and require Defendant to disclose the true nature of the Waterproof Mascara Products, including that they contain PFAS;

e) A declaration that Defendant must disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of the Waterproof Mascara Products;

f) An award of all actual, general, special, incidental, statutory, treble, or other multiple, punitive and consequential damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

g) Award Plaintiffs and the Class reasonable attorneys' fees and costs of suit, as allowed by law; and

h) Award such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: August 23, 2022                              Respectfully submitted,

_/s/ James Bilsborrow_

James Bilsborrow (JB8204)
  _jbilsborrow@weitzlux.com_
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Phone: (212) 558-5500
Fax:    (212) 344-5461

Devin Bolton (SBN 290037) (_pro hac vice_
forthcoming)
  _dbolton@weitzlux.com_
**WEITZ & LUXENBERG, PC**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (212) 558-5552
Fax:    (212) 344-5461

Christopher A. Seeger
  _cseeger@seegerweiss.com_
Jeff Grand
  _jgrand@seegerweiss.com_
Christopher Ayers
  _cayers@seegerweiss.com_
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
Phone: (973) 639-9100
Fax: (973) 679-8656

Sam Strauss (p_ro hac vice_)
  _sam@turkestrauss.com_
Raina Borrelli (_pro hac vice_)
  _raina@turkestrauss.com_
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423

_Attorneys for Plaintiffs_

**CERTIFICATE OF SERVICE**

I certify that on August 23, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ James Bilsborrow*
James Bilsborrow