**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZAIDA HICKS, STEPHANIE VARGAS, SUMNER DAVENPORT, STEPHANIE PINGHERA, KARRIE RUGGIERO, MARJIE SANTIAGO, KATHLEEN SECOR, GWENDOLYN SIMMONS, NANCY SPRING, HEIDI TREMBLY, LISA TURNER, and REBECCA VEGA, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br>v.<br><br>L'OREAL USA, INC.,<br><br>       Defendant. | Civil Action No.: 1:22-cv-01989-JPC |
| SONIA CAUCHI and STEPHANIE BRANTON individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br>v.<br><br>L'OREAL USA, INC.,<br><br>       Defendant. | Civil Action No.: 1:22-cv-03926-JPC |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CASE AND REQUEST FOR JUDICIAL NOTICE**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ............................................................................................. 1

ALLEGATIONS IN THE COMPLAINT ............................................................. 2

    A.  PFAS Are a Class of Chemicals That Are Toxic at Very Low Levels. ......................... 2

    B.  PFAS Used in Cosmetic Products are Essentially Unregulated. .................................. 3

    C.  Testing Shows PFAS Are Present in Defendant's Waterproof Mascara
        Products That Were Purchased by Plaintiffs. ................................................................ 4

    C.  Defendant's Misrepresentations and Material Omissions. ............................................ 5

    D.  Plaintiffs' Purchase and Use of the Waterproof Mascara Products. ............................ 6

ARGUMENT ..................................................................................................... 6

    A.  The Court Should Not Take Judicial Notice of the Exhibits
        Submitted by Defendant. ............................................................................................... 6

    B.  Plaintiffs Have Established Article III Standing. ......................................................... 8

        1.  Plaintiffs allege the products they purchased contained PFAS. ............................ 11

        2.  Plaintiffs allege that all PFAS are harmful to human health. ................................ 12

        3.  Plaintiffs need not allege specific quantities of PFAS in the products. ................. 13

        4.  Plaintiffs' claims are based on overpayments, not risk of future injury. .............. 15

    C.  Plaintiffs' Claims Are Not Preempted. ........................................................................ 15

    D.  The Court Should Not Apply the Primary Jurisdiction Doctrine. ............................... 17

    E.  Plaintiffs' Claims Are Plausible and Grounded in Established Law. .......................... 20

        1.  Plaintiffs plausibly allege that reasonable consumers were misled by
            Defendant's misrepresentations and material omissions. ..................................... 20

        2.  Reasonable consumer do not expect the Waterproof Mascara Products to

contain undisclosed PFAS. ..................................................................................23

F.  The Court Should Reject Defendant's Undeveloped Claim That Plaintiffs'
Liability Theory is Unpled..........................................................................24

REQUEST FOR LEAVE TO AMEND.........................................................................25

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

## *Cases*

*L-7 Designs, Inc. v. Old Navy, LLC,*
    647 F.3d 419 (2d Cir. 2011)................................................................................21

*Ackerman v. Coca-Cola Co.,*
    No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010).............................18, 19

*In re Amla Litig.,*
    320 F. Supp. 3d 578 (S.D.N.Y. 2018)................................................................14, 15

*Apotex Inc. v. Acorda Therapeutics, Inc.,*
    823 F.3d 51 (2d Cir. 2016)..................................................................................7

*Akridge v. Whole Foods Mkt. Grp., Inc.,*
    No. 20 Civ. 10900, 2022 WL 955945 (S.D.N.Y. Mar. 30, 2022) ..........................................12

*Astiana v. Hain Celestial Grp., Inc.,*
    783 F.3d 753 (9th Cir. 2015) ..............................................................................16

*Axon v. Florida's Nat. Growers, Inc.,*
    813 F. App'x 701 (2d Cir. 2020) ...........................................................................9

*Boysen v. Walgreen Co.,*
    2012 WL 2953069 (N.D. Cal. July 19, 2012).................................................................14

*Budhani v. Monster Energy Co.,*
    527 F. Supp. 3d 667 (S.D.N.Y. 2021).......................................................................21

*Carter v. HealthPort Techs., LLC,*
    822 F.3d 47 (2d Cir. 2016).................................................................................9

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.,*
    957 F. Supp. 2d 277 (S.D.N.Y. 2013).....................................................................7, 8

*Critcher v. L'Oreal USA, Inc.,*
    959 F.3d 31 (2d Cir. 2020).................................................................................16

*In re Domestic Airline Travel Antitrust Litig.,*
    221 F. Supp. 3d 46 (D.D.C. 2016) ..........................................................................7

*Dubuisson v. Stonebridge Life Ins. Co.,*
    887 F.3d 567 (2d Cir. 2018)............................................................................9, 13

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)........................................................................................7

*Elkind v. Revlon Consumer Prod. Corp.*,
  No. 14-CV-2484 JS AKT, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ...........................18

*Ellis v. Trib. Television Co.*,
  443 F.3d 71 (2d Cir. 2006).................................................................................17, 18

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)...................................................................................20

*Fishon v. Mars Petcare US, Inc.*,
  501 F. Supp. 3d 555 (M.D. Tenn. 2020)......................................................................10

*In re Frito Lay N. Am., Inc. All Nat. Litig.*,
  No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).........................................17

*In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*,
  831 F. Supp. 2d 507 (D. Mass. 2011) .......................................................................14

*Gaminde v. Lang Pharma Nutrition, Inc.*,
  No. 1:18-cv-300 (GLS/DEP), 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) .......................12

*In re Gen. Mills Glyphosate Litig.*,
  No. 16-cv-02869, 2017 WL 2983877 (D. Minn. July 12, 2017) .......................................10

*GMO Free USA v. Coty Inc. et al.*,
  No. 2021 CA 004786 B (D.C. Sup. Ct. June 1, 2022) (Ex. 5, Dkt. 30-5) .............................23

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................... passim

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985)....................................................................................7

*Greene v. Gerber Prods. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) .........................................................................25

*Harris v. Pfizer Inc.*,
  568 F. Supp. 3d 231 (S.D.N.Y. 2022)..............................................................13, 14, 15, 22

*Hayden v. Cnty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999).....................................................................................25

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
　　2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .........................................................................14

*Holt v. Foodstate, Inc.*,
　　No. 15cv78 L (JMA), 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015)......................................17

*Hughes v. Chattem, Inc.*,
　　818 F. Supp. 2d 1112 (S.D. Ind. 2011) ..................................................................................22

*John v. Whole Foods Mkt. Grp., Inc.*,
　　858 F.3d 732 (2d Cir. 2017).............................................................................9, 10, 11, 12

*Johnson v. Nyack Hosp.*,
　　86 F.3d 8 (2d Cir. 1996)...........................................................................................................18

*Kanan v. Thinx Inc.*,
　　No. CV 20-10341 JVS (JRPx), 2021 WL 4464200 (C.D. Cal. June 23, 2021).....................25

*Kimca v. Sprout Foods, Inc.*,
　　2022 WL 1213488 (D.N.J. Apr. 25, 2022) ............................................................................14

*In re KIND LLC "Healthy & All Natural" Litig.*,
　　209 F. Supp. 3d 689 (S.D.N.Y. 2016)....................................................................................18

*Kramer v. Time Warner Inc.*,
　　937 F.2d 767 (2d Cir. 1991)......................................................................................................7

*Mantikas v. Kellogg Co.*,
　　910 F.3d 633 (2d Cir. 2018)....................................................................................................23

*McVetty v. TomTom N. Am., Inc.*,
　　No. 19 CV 4908 (NSR), 2021 WL 965239 (S.D.N.Y. Mar. 13, 2021) .................................21

*In re Metformin Mktg. & Sales Prac. Litig.*,
　　Civ. A. No. 20-2324, 2022 WL 970281 (D.N.J. Mar. 30, 2022).............................................12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
　　725 F.3d 65 (2d Cir. 2013)................................................................................................9, 15

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*,
　　46 F.3d 220 (2d Cir. 1995)......................................................................................................19

*O'Connor v. Henkel Corp.*,
　　No. 14-CV-5547 (ARR) (MDG), 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015) .................16

*O'Neil v. Standard Homeopathic Co.*,

346 F. Supp. 3d 511 (S.D.N.Y. 2018) ........................................................................9

*Palmer v. Amazon.com, Inc.*,
    --- F.4th ---, 2022 WL 10208502 (2d Cir. 2022) ...........................................18, 19

*Parks v. Ainsworth Pet Nutrition, LLC*,
    No. 18 CIV. 6936 (LLS), 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ..................23

*Paulino v. Conopco, Inc.*,
    No. 14-CV-5145 JG RML, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ..........24

*Renfro v. Champion Petfoods USA, Inc.*,
    25 F.4th 1293 (10th Cir. 2022) .........................................................................12

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ...............................................................................7

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ..........................................................................2, 23

*Song v. Champion Petfoods USA, Inc.*,
    27 F.4th 1339 (8th Cir. 2022) ...........................................................................22

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................9

*United States v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956) .............................................................................................18

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .............................................................................21

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ...........................................................................................15

**Statutes and Rules**

21 C.F.R. § 101.100(a)(3)(ii) ........................................................................................17

21 C.F.R. § 700.3(e) .....................................................................................................17

21 C.F.R. § 701.3(a) .....................................................................................................17

21 C.F.R. § 701.3(1) .....................................................................................................17

21 U.S.C. § 362(a) ........................................................................................................16

21 U.S.C. § 379s(a)...........................................................................................................15

Fed. R. Civ. P. 9(b)..........................................................................................................25

New York General Business Law § 349............................................................................25

**INTRODUCTION**

This is a straightforward case of consumer deception, based on legal theories well established in the Second Circuit. In 2021, scientists suspected that mascaras marketed as "waterproof" were likely manufactured using per- or polyfluoroalkyl substances ("PFAS"), which are chemicals used to confer water resistant qualities in certain consumer goods. These scientists conducted a study and published a peer-reviewed analysis finding that some mascaras purporting to be waterproof contain undisclosed PFAS. Defendant L'Oreal USA Inc. ("L'Oreal" or "Defendant") sells multiple lines of "waterproof" mascara. Plaintiffs, concerned they were applying PFAS-containing cosmetics around their eyes, tested Defendant's waterproof mascara products and, consistent with the 2021 peer-reviewed study, found that the waterproof mascara products they purchased also contained PFAS. Reasonable consumers wish to know if a product they apply to their face and eyes contains PFAS because the chemicals are toxic. Had Plaintiffs known these products contained PFAS, they would have paid less for them or purchased something else. Defendant understands consumers will make this choice and therefore does not disclose that its products contain PFAS. In short, a classic case of economic harm.

Defendant's response to this lawsuit is the kitchen sink. On the one hand, it claims PFAS are everywhere, so what could Plaintiffs expect, essentially admitting the chemicals are present in its products. On the other hand, Plaintiffs purportedly lack standing because they have not *proven*, on the pleadings, that PFAS are in the products they purchased (despite apparently being everywhere). And, even if PFAS are present in those products, the chemicals are not toxic. All of these arguments ignore or misrepresent what is actually pled in the First Amended Consolidated Class Action Complaint ("FAC"). Defendant regularly misquotes fragments of allegations, ignores controlling Second Circuit authority, and submits cherry-picked material from outside the

1

complaint, offering its own misleading spin on the scientific consensus. Despite all this arm-waving and pejorative rhetoric,[1] this case is about simple consumer deception: L'Oreal used PFAS to make its products, it did not tell consumers this material fact, and had consumers known, they would have purchased something else. In this Circuit, these allegations are more than enough to overcome Defendant's motion to dismiss. Accordingly, Defendant's motion should be denied.

## ALLEGATIONS IN THE COMPLAINT

### A.  PFAS Are a Class of Chemicals That Are Toxic at Very Low Levels.

PFAS are a group of man-made chemicals used in certain consumer products to repel water. (FAC ¶¶ 42-43.) All PFAS share fundamental similarities, including a chemical structure that makes them highly persistent in the environment and in human and animal bodies. (*Id.* ¶ 44.) This persistent quality endows all PFAS with a shared toxicity similar to other highly persistent compounds like DDT and PCBs.[2] (*Id.*) PFAS may be absorbed dermally and are toxic to humans at extremely low levels. (*Id.* ¶¶ 21-22, 55.) The medical and scientific literature links PFAS exposure to various cancers, infertility, modulation of the immune system, and multiple other health conditions. (*Id.* ¶¶ 57-58.) Pregnant women, in particular, face acute risks because PFAS are capable of crossing the placenta to expose vulnerable unborn children. (*Id.* ¶ 59.)

Certain PFAS, such as PFOA, have been subjected to greater scientific scrutiny because of their past industrial use and consequent detection in certain water bodies, as well as some fish and

---

[1] To take but one example, the opening paragraphs of Defendant's brief claim that the "plaintiffs' bar and legal observers consider this putative consumer class action a pioneering test case for an overarching liability theory." (Mem. in Supp. of Motion (hereafter, "Br."), Dkt. 30 at 1.) Defendant provides no support for this representation. It is but one illustration of exaggerated or misleading arguments intended to convey that this case is something other than the straightforward type of consumer deception case the Second Circuit has frequently found to be viable.

[2] Defendant claims that the original complaint, unlike the FAC, conceded that some PFAS are not toxic, and it accuses Plaintiffs of "falsely" amending that purported concession away. (Br. at 7.) Defendant supports this baseless assertion by quoting out-of-context fragments of two paragraphs of the original complaint and then relying exclusively on cherry-picked material outside the four corners of the complaint. (*See id.*) Even if Defendant's claim were true (it is not), it is axiomatic that an amended pleading "supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation omitted).

animal populations.[3] (*Id.* ¶ 45.) The Environmental Protection Agency (EPA) has designated PFOA as a "likely carcinogen." (*Id.* ¶¶ 50.) In 2021, the EPA commenced the process for designating PFOA as a "hazardous substance" under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). (*Id.* ¶ 49.) In June 2022, the EPA announced amended lifetime health advisory levels (HALs) for several PFAS, including PFOA; the amended HAL for PFOA is 0.004 parts per trillion (ppt) in water, which is below the current detection capability of most detection devices. (*Id.* ¶ 64.) This means that according to the EPA, if PFOA can be detected in water **at all**, the concentration is too high. (*Id.*) PFOA was one PFAS detected in Defendant's waterproof mascara products by Plaintiffs' independent lab testing. (*Id.* ¶ 99.)

B.     **PFAS Used in Cosmetic Products Are Essentially Unregulated.**

PFAS are intentionally added to certain cosmetic products to make them more water resistant. (*Id.* ¶ 72.) PFAS may also be present in cosmetics as an unintended byproduct or impurity.[4] (*Id.* ¶ 79.) In this case, PFAS were detected in Defendant's line of waterproof mascara products. Although discovery will demonstrate whether Defendant added PFAS intentionally to achieve this waterproof quality, a fair reading of the FAC, with inferences drawn in Plaintiffs' favor, suggests that PFAS are intentionally added by Defendant rather than a byproduct or

---

[3] Defendant's memorandum repeatedly describes the FAC as alleging "that PFAS pervade the environment," and have contaminated "most every source of nature's most common and abundant raw material, water." (Br. at 24; *see also* Br. at 1, 2-3.) Again, Defendant supports this characterization by quoting fragments of two paragraphs of the FAC, one paragraph from the superseded original complaint, and documents outside the pleading. (*See id.* at 24.) This description is perhaps convenient for Defendant's argument but it is not what the FAC alleges. Rather, Plaintiffs allege that PFAS has contaminated "certain bodies of water, as well as some drinking water resources, fish, and marine mammals." (FAC ¶ 45.) Plaintiffs make no allegations regarding the source of Defendant's raw materials.

[4] In yet another misrepresentation of the FAC's allegations, Defendant claims that "the FAC conspicuously does *not* contend that L'Oreal uses any PFAS intentionally as ingredients," (Br. at 5 (emphasis in original)), and then proceeds as if PFAS could only be present in its products as an impurity at trace levels. (*See id.* (citing material outside pleading); *see also id.* at 6, 19, 21-22, 25.) But the FAC alleges that PFAS are present in cosmetic products "both as an intended ingredient and as degradation products and impurities." (FAC ¶ 79.) Although Defendant's brief quotes fragments of paragraph 79 of the FAC, it only quotes those fragments referencing "impurities" and "degradation," omitting the third and, in this case, more likely explanation: intentional use. (*See* Br. at 5.)

3

impurity. Indeed, over the course of a 25 page brief, Defendant certainly does not say otherwise.

The use and labeling of cosmetic products is overseen by the Food and Drug Administration (FDA). With the exception of some color additives, however, the FDA does not require cosmetic ingredients or products to be FDA-approved prior to entering the marketplace. (*Id.* ¶¶ 28-29.) No federal regulations govern what cosmetic labels must disclose, meaning that many cosmetic products that contain PFAS do not disclose this on their label. (*Id.* ¶ 77.) That said, cosmetics manufacturers understand consumers desire products to be free of toxic chemicals, including PFAS. (*Id.* ¶ 41.) Thus, many manufacturers produce PFAS-free cosmetics. (*Id.* ¶¶ 37-39.) Further, because the FDA does not regulate cosmetic ingredients, several states have taken action to do so, passing legislation to preclude the use of PFAS in cosmetics. (*Id.* ¶¶ 67, 70.)

C.    **Testing Shows PFAS Are Present in Defendant's Waterproof Mascara Products That Were Purchased by Plaintiffs.**

In 2021, a peer-reviewed academic study analyzed 231 cosmetic products to screen for total fluorine, which scientists use as a proxy for PFAS. (*Id.* ¶¶ 81-82.) Researchers found high fluorine levels in cosmetic products advertised as resistant to water and oils, including waterproof mascaras. (*Id.* ¶ 84.) Only 8 percent of the cosmetic products screened for total fluorine listed any PFAS as an ingredient when, in reality, the presence of PFAS in these products was widespread. (*Id.* ¶ 88.)

Following publication of this peer-reviewed study, which indicated that many waterproof mascara products contained undisclosed PFAS, Plaintiffs conducted their own analysis of Defendant's waterproof mascara products using an independent lab that applied industry standard testing methods. (*Id.* ¶¶ 96-103.) This independent analysis confirmed what scientific researchers wrote in their peer-reviewed study: PFOA, PFHxA, PFDoS, NEtFOSE, and AOF were found in detectable quantities in six of Defendant's waterproof mascara products, including L'Oreal

Voluminous Waterproof Mascara, L'Oreal Voluminous Lash Paradise, Maybelline Volum'
Express the Falsies, Maybelline Volum' Express Total Temptation, Maybelline Great Lash, and
Maybelline Total Temptation (collectively, the "Waterproof Mascara Products"). (*Id.* ¶¶ 98-99.)
Prior to conducting this testing, Plaintiffs purchased and used each of these six waterproof mascara
products during the class period. (*Id.* ¶¶ 128, 132-33, 141, 146, 154, 160, 165, 172, 177, 184, 189,
196, 201, 208, 213, 220, 225, 232, 237, 244, 249, 256, 261, 268, 273, 280, 285, 293.)

     **D.**    **Defendant's Misrepresentations and Material Omissions.**

Defendant knew or should have known that its Waterproof Mascara Products contain
PFAS, but intentionally failed to disclose this material fact to Plaintiffs and similarly situated
consumers. (*Id.* ¶ 19.) None of the Waterproof Mascara Products disclose on their packaging,
labeling, or publicly available ingredient list that the products contain detectable levels of PFAS,
including PFOA. (*Id.* ¶ 118.) In contrast, some cosmetic product manufacturers disclose on their
product label or ingredient list the presence of PFAS. (*Id.* ¶ 73.) Defendant does not, though it
essentially acknowledges PFAS are present in its waterproof mascara products and attempts to
shift blame to Plaintiffs, arguing they should have expected as much. (*See, e.g.*, Def. Br. at 24.)

Defendant also affirmatively misrepresents the nature and health risks posed by the
Waterproof Mascara Products. The packaging for the products states that they are "suitable" for
use on or near "sensitive eyes" (*id.* ¶¶ 122-24), but it is neither suitable nor safe to apply toxic and
carcinogenic PFAS around the eyes where the chemical is likely to be dermally absorbed.
Although its Waterproof Mascara Products contain PFAS, Defendant represents that it goes "above
and beyond industry standards" by "providing the best [] ingredients, formulation and performance
[] in each and every one of [its] products." (*Id.* ¶ 108.) Defendant also conveys that its products
are at the forefront of the cosmetic industry, are "Rooted in Science," and touts its employment of

5

over 470 U.S.-based researchers and scientists to carry out this commitment. (*Id.* ¶ 107.) Defendant's representations, and the emphasis it places on adherence to industry standards and science, lead reasonable consumers to conclude that its products do not contain toxic PFAS, when in fact, the opposite is true.

### E.   Plaintiffs' Purchase and Use of the Waterproof Mascara Products.

Plaintiffs are purchasers and users of one or more Waterproof Mascara Products from New York, New Jersey, California, Iowa, Michigan, and North Carolina. (*Id.* ¶¶ 4-17, 128, 141, 154, 165, 177, 189, 201, 213, 225, 237, 249, 261, 273, 285.) Plaintiffs allege that they saw and relied upon Defendant's packaging and ingredient list when making their purchasing decisions and were thus unaware that the Waterproof Mascara Products contained PFAS. (*Id.* ¶¶ 135, 137, 145, 150, 161-62, 173-74, 185-86, 197-98, 209-10, 221-22, 233-34, 245-46, 257-58, 269-70, 281-82, 294-95.) As a result of Defendant's misrepresentations and omissions, Plaintiffs reasonably believed it was safe and non-toxic to apply the Waterproof Mascara Products around their eyes. (*Id.* ¶¶ 132, 146, 157, 169, 181, 193, 205, 217, 229, 241, 253, 265, 277, 290.) Had Plaintiffs known the Waterproof Mascara Products contained PFAS, they would not have purchased the products or would have paid less for them. (*Id.* ¶¶ 138, 148, 163, 175, 183, 199, 211, 218, 231, 247, 259, 271, 283, 292.) Since learning that the Waterproof Mascara Products contain PFAS, Plaintiffs have stopped using these products and/or purchasing them. (*See id.* ¶¶ 138, 148, 183, 218, 231, 292.)

### ARGUMENT

### A.   The Court Should Not Take Judicial Notice of the Exhibits Submitted by Defendant.

In support of its motion to dismiss, Defendant filed a Notice for Request of Judicial Notice (Dkt. 31) consisting of nine exhibits of material outside the pleadings, which it offers for the truth of the matter asserted, on the basis that the Court may consider these documents as "referenced in

the complaint" and as government agency documents of which the Court may take judicial notice. (Br. at 5 n.1.) Of these nine documents, only two are cited in the FAC at all and none of them are properly considered for their truth on a Rule 12 motion.[5]

Exhibits 6 and 7 are cited in the FAC, but not incorporated by reference. Both are cited once, as examples of studies showing that PFAS have adverse effects in humans. (*See* FAC ¶¶ 53, 65.) As such, they were not incorporated into the complaint. *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). Instead, documents properly incorporated by reference "form the basis for a claim or part of a claim, such as an authentic copy of a contract underlying a complaint asserting a breach of that contract." *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 70-71 (D.D.C. 2016) (internal quotations and alterations omitted). Documents "merely cited as the source of certain factual allegations" are not incorporated in the pleading. *Id.*

For similar reasons, the Court should not take judicial notice of Defendant's remaining exhibits, which are otherwise general overviews about PFAS from various government websites. When a court takes judicial notice of public documents, it may do so "'only to determine what the documents stated,' and 'not to prove the truth of their contents.'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (cleaned up). Thus, a court may take judicial notice of an agency document to note an agency's internal procedures, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016), or to show that a document was actually filed with an agency, *see Kramer*, 937 F.2d at 744, but cannot take judicial notice of a document for the truth of its contents. For the same reason, while a court may take judicial notice of certain facts outside the pleadings, it may only take notice of facts that are generally known, regardless of whether they are public or not. *See, e.g., City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 287-88 (S.D.N.Y.

---

[5] Exhibit 5 is an order from an action in the D.C. Superior Court, which Plaintiffs do not dispute the Court can consider for its persuasive value.

2013) (declining to take judicial notice of public data regarding fluctuations in the gold market because it was not a "not a well-publicized fact of which an average investor would be aware" and so was "not a fact fairly termed 'generally known' within this Court's jurisdiction").

Defendant asks this Court to take judicial notice of several printouts from government websites that present general, simplified overviews of the purported safety and toxicity of PFAS intended for a lay audience. The proffered documents are not promulgated rules or findings, and they do not disclose generally known facts. Instead, they are broad overviews of the dangers of PFAS, written for a lay audience, that are not intended to be comprehensive or authoritative and may not even reflect the government's current understanding. The fact that Defendant is attempting to misrepresent the scientific consensus by cherry-picking quotes from non-scholarly documents and websites demonstrates exactly why the Rules disfavor considering facts outside the pleadings on a motion to dismiss. The Court should not consider the proffered materials and should likewise deny Defendant's attempt to foreclose at the motion to dismiss stage a complete factual determination of key issues like the dangers posed by all PFAS.

### B. Plaintiffs Have Established Article III Standing.

Plaintiffs' claims are simple and routinely form the basis of viable consumer claims in this Circuit: Plaintiffs purchased cosmetic products they reasonably believed to be free of toxic carcinogenic PFAS. But for Defendant's misrepresentations and material omissions, Plaintiffs would not have bought the products, or would have paid less for them. This economic injury confers Article III standing, and Defendant's choice to ignore controlling law in arguing otherwise is telling; indeed, ***Defendant does not cite a single controlling Second Circuit standing decision*** in nearly eleven pages of its standing arguments. The reason is obvious: Second Circuit case law squarely confers jurisdiction upon this Court.

To establish Article III standing, a plaintiff must have suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be concrete, particularized, and actual or imminent. *Id.* at 339. In the Second Circuit, the Article III standing threshold is very low; even an "identifiable trifle will suffice." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) (internal quotation omitted). Nearly "any monetary loss" suffered by a plaintiff, however small, is sufficient to establish injury in fact. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

An injury is concrete when it is "real, and not abstract." *Spokeo*, 578 U.S. at 340 (internal quotations omitted). A plaintiff articulates a concrete injury where she pleads that a defendant induced her to purchase products at an inflated price by failing to disclose relevant facts about the product. *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 575 (2d Cir. 2018); *see also O'Neil v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 525-26 (S.D.N.Y. 2018) (plaintiff suffered economic injury by purchasing product containing undisclosed hazardous ingredient). In such a case, "[p]laintiffs have articulated an injury in fact" where they allege a "difference in price between what they would have paid for the [product] with full information and what they in fact paid." *Dubuisson,* 887 F.3d at 575. Under this standard, a consumer who alleges that she paid a market price for a product with an undisclosed defect states a viable injury for purposes of Article III standing. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017). Similarly, a plaintiff who alleges she overpaid for products based on labels that misrepresent the ingredients of the product has suffered an injury in fact. *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (plaintiff "suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury – paying a premium – as a result").

9

To establish Article III standing at the pleading stage, "a plaintiff need not prove the accuracy of [the allegations] or the rigor of [their] methodology; he need only generally allege facts that, accepted as true, make his alleged injury plausible." *John*, 858 F.3d at 737. Any dispute over the truth of the pleaded facts goes to the merits, resolution of which should be left for a later stage of the proceedings. *Id.*; *see also In re Gen. Mills Glyphosate Litig.*, No. 16-cv-02869, 2017 WL 2983877, at *1-3 (D. Minn. Jul. 12, 2017) (plaintiffs alleged injury partly because complaint referenced laboratory testing indicating products contained the chemical glyphosate); *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 565 (M.D. Tenn. 2020) (plaintiffs had standing based on independent testing finding that dog food the advertised as grain-free contained grain).

Plaintiffs allege that PFAS are a class of toxic chemicals that are harmful at extremely low levels. (FAC ¶¶ 44, 54-55.) Certain PFAS, such as PFOA, have been designated "likely carcinogens" and "hazardous substances" by the EPA, and are considered so toxic that any detectable level is unsafe. (*Id.* ¶¶ 49-50, 64.) Defendant's Waterproof Mascara Products contained, *inter alia*, PFOA.[6] (*Id.* ¶ 98.) To confirm the presence of PFAS in the Waterproof Mascara Products, Plaintiffs tested the very products the peer-reviewed literature identified as containing undisclosed PFAS—namely, mascaras claiming to be water resistant. (*Id.* ¶¶ 84, 96-103.)

Further, because of the health risks posed by PFAS, the presence of the chemicals in cosmetic products is material to reasonable consumers. (*Id.* ¶ 102.) Defendant affirmatively represented that the Waterproof Mascara Products were suitable for use and did not disclose that the products contained PFAS. (*Id.* ¶¶ 105-127.) As a result of these material misrepresentations and omissions, Plaintiffs purchased the Waterproof Mascara Products reasonably believing they were PFAS-free, when they in fact contained harmful PFAS. But for these material

---

[6] Defendant argues that certain PFAS do not pose a human health risk, but this argument is largely irrelevant because Defendant's Waterproof Mascara Products contained PFOA, which EPA indisputably characterizes as toxic.

misrepresentations and omissions, Plaintiffs would not have purchased the mascara products at the price they paid, if they purchased them at all.

Based on these allegations, Plaintiffs allege a specific, concrete injury fairly traceable to Defendant's conduct. Rather than confront this reality, Defendant mischaracterizes the complaint, relying heavily on documents from outside the pleadings and authorities from outside the Second Circuit, in an attempt to cloud the issue and foreclose argument on the merits.

### 1.    Plaintiffs allege the products they purchased contained PFAS.

Defendant argues that Plaintiffs do not allege that the mascara products they purchased contained PFAS. Plaintiffs repeatedly allege that they did. (*See, e.g.,* FAC ¶¶ 136, 147, 158, 170, 182, 194, 206, 218, 230, 242, 254, 266, 278, 291 ("the [plaintiff's] Mascaras contained detectable levels of PFAS"). Indeed, Plaintiffs tested the very product lines of mascaras they purchased to confirm the plausibility of their claims. (*See id.* ¶¶ 96-103.) To surmount Plaintiffs' well-pleaded allegations, Defendant attempts to smuggle in a merits argument as a standing one, arguing that Plaintiffs have not *proved* that the products Plaintiffs purchased contain PFAS. Defendant relies exclusively on unreported and out-of-circuit authorities for the proposition that Plaintiffs must specifically plead that they performed testing on the actual physical products they purchased—and in most cases no longer retain—to establish standing. This is not the law.

Under Second Circuit precedent, a plaintiff alleging injury based on the purchase of a mass-market product can establish standing by pleading facts showing systemic practices regarding the product. *See, e.g.*, *John*, 858 F.3d at 734, 737-38. Plaintiffs allege that researchers found that "waterproof" cosmetic products, including mascaras, contain high levels of undisclosed PFAS and Plaintiffs then tested mascara products purporting to be waterproof, finding undisclosed PFAS. This is more than sufficient to establish Plaintiffs' products contained PFAS.

The cases cited by Defendant are not to the contrary—all stand for the undisputed proposition that plaintiffs must *plead* that the products they purchased contained an impurity or contaminant, not that plaintiffs cannot support their pleadings with facts showing systematic, ubiquitous contamination of the brand and type of products they purchased.[7]

As in *John*, Plaintiffs here allege a specific harm: that the products they purchased contain PFAS, and that they therefore overpaid for them based on Defendant's misrepresentations and omissions. Plaintiffs support their claims by alleging that lab tests of the same Waterproof Mascara Products that Plaintiffs purchased also contained PFAS. While Defendant disputes the reliability of this evidence, "[a]t the pleading stage, [a plaintiff] need not prove the accuracy of the [testing evidence] or the rigor of its methodology; he need only generally allege facts that, accepted as true, make his alleged injury plausible." *Id.* at 737. In other words, Plaintiffs have met the standard required by the Second Circuit.

### 2. Plaintiffs allege that all PFAS are harmful to human health.

Defendant next argues Plaintiffs lack standing because they only allege that the products contain PFAS generally, and certain PFAS are not toxic. As an initial matter, this argument is inaccurate (and thus irrelevant) because Plaintiffs' testing showed that PFOA was present in the Waterproof Mascara Products, and PFOA is what the EPA considers a "likely carcinogen" that is dangerous at any detectable level. (FAC ¶¶ 50, 64.) The Court can reject Defendant's argument on

---

[7] *See, e.g., Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293, 1305 (10th Cir. 2022) (plaintiffs lacked standing where they specifically alleged that the at-issue product was contaminated beginning in 2018, but they only purchased the product before 2018); *In re Metformin Mktg. & Sales Prac. Litig.*, Civ. A. No. 20-2324, 2022 WL 970281, at *3 (D.N.J. Mar. 30, 2022) (no standing where plaintiffs "did not allege that they purchased" the contaminated products at issue); *Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20 Civ. 10900, 2022 WL 955945, at *2 (S.D.N.Y. Mar. 30, 2022) (no standing where plaintiff pleaded facts showing that defendants sold certain classes of products of products containing undisclosed allergens, but plaintiff only purchased other classes of products sold by the same defendant). Defendant does cite one unreported district court case from this Circuit where the court imposed the kind of test it is advocating here: *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-cv-300 (GLS/DEP), 2019 WL 1338724, at *3 (N.D.N.Y. Mar. 25, 2019). There, the district court ignored *John* entirely and instead applied a stricter standard articulated by the Eighth Circuit but not adopted by the Second.

this basis alone. The argument should also be rejected because it is nothing more than an attempt to prematurely litigate the merits of the case: Plaintiffs assert that all PFAS are dangerous at extremely low levels, and that the products contain PFAS. Defendant disputes this premise, arguing that some PFAS in their products are actually safe. Defendant will be free to make this argument at the merits stage (through qualified witnesses, not lawyers), but by raising it as a challenge to standing, it asks this Court "to do what [it] cannot: decide the merits of the claim *en route* to determining its justiciability."[8] *Dubuisson*, 887 F.3d at 574.

### 3. Plaintiffs need not allege specific quantities of PFAS in the products.

Defendant also asserts that Plaintiffs fail to specifically allege that PFAS are present in the products at dangerous levels. This argument is based on a premise that is flatly at odds with the FAC, which alleges PFAS are dangerous at extremely low levels and that PFOA, which was present in the Waterproof Mascara Products, is dangerous at any detectable level.

Moreover, Defendant's argument substitutes its own invented legal standard for that of the Second Circuit. Plaintiffs have standing because they allege that L'Oreal induced them to purchase products at an inflated price by failing to disclose relevant facts about the product. *Dubuisson*, 887 F.3d at 575. In such a case, "[p]laintiffs have articulated an injury in fact" where they allege a "difference in price between what they would have paid for the [product] with full information and what they in fact paid." *Id.* Any argument that the plaintiffs did not in fact overpay goes "to the merits of the plaintiffs' claims, not their standing to bring them." *Harris v. Pfizer Inc.*, 568 F. Supp.

---

[8] Defendant cites no law in support of its argument, instead relying entirely on documents outside the pleadings to dispute Plaintiffs' allegations. For the reasons set forth *supra*, these documents are not incorporated into the FAC and it is improper to consider them on a motion to dismiss. Defendant also misrepresents what these documents state, which is precisely why courts refuse to consider material outside the pleadings on a Rule 12 motion. Exhibit 6, for example, plainly states that "All PFAS" are "highly persistent in the environment and in our bodies," and demonstrate "[o]bserved toxicity." (Ex. 6 at 8.) Defendant mischaracterizes the document to mean that only some PFAS are dangerous. Use of outside material of this nature should not be permitted to preclude fact-finding before the case reaches the merits stage.

3d 231, 239 (S.D.N.Y. 2022) ("Whether the plaintiffs have alleged sufficient facts to recover damages is a distinct question from whether they have standing to seek those damages.")

Defendant's argument that Plaintiffs did not in fact overpay for their products is a merits argument disguised as a standing one. The cases Defendant cites do not prove otherwise. Only one of them applies Second Circuit law, and it upheld similar overpayment claims. In that case, *In re Amla Litig.*, 320 F. Supp. 3d 578, 582 (S.D.N.Y. 2018), the plaintiffs alleged that L'Oreal manufactured a hair relaxer cream that was unreasonably dangerous. Following expert discovery, L'Oreal moved for summary judgment, which the court granted as to personal injury claims, but denied in regards to the overpayment claims. 320 F. Supp. 3d at 597. In the portion of the decision Defendant quotes in its motion here, the court noted that *personal injury* claims were "not actionable" when they were based on injuries that the plaintiffs did not notice. *Id.* at 586. The same plaintiffs, however, also brought claims alleging that they overpaid for the product as a result of L'Oreal's misrepresentations that it was safe, which the court *did* allow to proceed.[9] *Id.* at 592, 597. Plaintiffs here do not bring any personal injury claims. They do not bring claims based on any potential future injury. Instead, they allege that they overpaid for their products based on L'Oreal's misrepresentations and material omissions, and that had L'Oreal not misrepresented the products' ingredients, they would have paid less or not purchased them at all. As such, they have alleged a sufficient injury for standing.

---

[9] The other cases Defendant cites are otherwise inapposite. For instance, in *In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 513 (D. Mass. 2011), the plaintiffs did not allege any misrepresentation by the defendant, "or that they would have purchased different or cheaper fruit juice products had they known." In *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *6-7 (N.D. Cal. July 19, 2012), the court dismissed because the plaintiff "failed to allege that he received a [product] worth objectively less than what one could reasonabl[y] expect," or "that had defendant's juice been differently labeled, he would have purchased an alternative juice." Similarly, in *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010), the court noted that the plaintiffs did not "allege[] that they overpaid or otherwise did not enjoy the benefit of their bargain." And in *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022), the court applied the Third Circuit's stricter test for economic standing that has not been adopted by the Second Circuit.

4.      **Plaintiffs' claims are based on overpayments, not risk of future injury.**

Defendant also argues that Plaintiffs' claims are improper attempts to recover for "the risk of future physical injury." (Br. at 11.) Plaintiffs do not bring personal injury claims, as Defendant paradoxically also recognizes in its brief. (*See id.* at 1.) "The plaintiffs instead bring claims grounded in contract and fraud. Such claims have the advantage (for the plaintiffs) that they do not require a showing of personal injury."[10] *Harris*, 586 F. Supp. 3d at 239. *See also In re Amla Litig.*, 320 F. Supp. 3d at 592 ("If there is a price premium, then every purchaser of the kit paid more than they otherwise would have, so every purchaser was injured.").

C.      **Plaintiffs' Claims Are Not Preempted.**

Under the doctrine of express preemption, "courts will find state law preempted if, applying standard tools of statutory construction, the challenged state law falls within the scope of Congress's intent to preempt." *In re MTBE Prods. Liab. Litig.*, 725 F.3d at 96-97. In every case asserting preemption, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 96 (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). As such, "the party asserting that federal law preempts state law bears the burden of establishing preemption." *Id.*

According to Defendant, Plaintiffs' claims are preempted by 21 U.S.C. § 379s(a), which states that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under" the Food, Drug and Cosmetics Act of 1938 (FDCA). Here, Plaintiffs do not seek to impose any requirements beyond those already embodied within the FDCA, contending

---

[10] Defendant also moves to dismiss Plaintiffs' claims for injunctive relief. Plaintiffs have opted to withdraw those claims and are no longer pursuing injunctive relief.

that Defendant's representations and omissions concerning the Waterproof Mascara Products are misleading and deceptive. These claims comport with the FDCA's requirements, which deem a cosmetic to be "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 362(a). Thus, Plaintiffs seek to recover damages for conduct that is *also prohibited by the FDCA*. The "FDCA does not preempt state laws that allow consumers to sue cosmetics manufacturers that label or package their products in violation of federal standards." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015); *O'Connor v. Henkel Corp.*, No. 14-CV-5547 (ARR) (MDG), 2015 WL 5922183, at *5 (E.D.N.Y. Sept. 22, 2015) (same).

Notably, Defendant cites to no authority finding express preemption where a consumer brought suit because a cosmetic product contained undisclosed contaminants. Instead, it relies solely on the Second Circuit's decision in *Critcher v. L'Oreal USA, Inc.*, 959 F3d 31 (2d Cir. 2020), a case challenging accurate quantity disclosures appearing on a label that was expressly approved by the FDA. In *Critcher*, the plaintiff alleged that "[t]he quantity of Liquid Cosmetic Product claimed by Defendant . . . is deceptive and misleading because while the containers accurately state the total amount of product contained therein, Defendant fails to disclose to consumers that they will not be able to access or use a large percentage—in some cases more than half—of the product purchased." *Id*. at 36. The Second Circuit determined that this claim was preempted because the plaintiff was clearly seeking to require a quantity disclosure not required by the FDCA.

Here, Plaintiffs seek to hold Defendant responsible under state law for misrepresenting its products are suitable for use on or near the eyes and omitting material information about the products' ingredients. Such misrepresentations and omissions are also prohibited by federal law. Further, although Defendant claims that the only ingredients it must disclose are "those

intentionally '*used as a component* in the manufacture of a cosmetic product,'" (Br. at 15 (citing 21 C.F.R. § 700.3(e)), the word "intentionally" does not actually appear anywhere in the regulation cited by Defendant. Instead, that word was added by Defendant's counsel in a transparent attempt to manufacture a preemption argument. What the regulation actually says is that the term "ingredient" includes "any single chemical entity or mixture used as a component in the manufacture of a cosmetic product." 21 C.F.R. § 700.3(e). The regulation contains no qualifier concerning the intentional or accidental way the ingredient was "used." Under the FDCA, the "label on each package of a cosmetic shall bear a declaration of the name of each ingredient in descending order of predominance." 21 C.F.R. § 701.3(a). Plaintiffs contend that this declaration should include PFAS present in the Waterproof Mascara Products. This contention does not diverge from the requirements of the FDCA.[11]

### D.   The Court Should Not Apply the Primary Jurisdiction Doctrine.

Defendant is wrong that this case involves "technical policymaking" and that the legal issues involved are "reserved to the FDA's primary jurisdiction." (Br. at 17.) Rather, this case presents issues "which courts are 'eminently well suited' to entertain," and, in fact, routinely entertain. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (internal quotation omitted).

"The doctrine of primary jurisdiction is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Ellis*

---

[11] Even if PFAS were added only incidentally, disclosure is only excused where there are "ingredients that are present in a cosmetic at insignificant levels[]." 21 C.F.R. § 701.3(1). Whether PFAS "are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage in the proceeding. *Holt v. Foodstate, Inc*., No. 15cv78 L (JMA), 2015 WL 9592534, at *4 (S.D. Cal. Dec. 31, 2015) (ruling on a motion to dismiss related to a similar regulation (21 C.F.R. §101.100(a)(3)(ii)) concerning food labeling under the FDCA).

*v. Trib. Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). "When applicable, 'a court defers to the agency for advisory findings and either stays the pending action or dismisses it without prejudice,' being careful not to disadvantage either party."[12] *Goldemberg*, 8 F. Supp. 3d at 476 (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996)).

> Though courts must make a case-by-case determination, they generally focus on the following factors:
> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

*Id.* (quoting *Ellis*, 443 F.3d at 83). "The Second Circuit has also held that courts should 'balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings.'" *In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 694 (S.D.N.Y. 2016) (quoting at *Ellis*, 443 F.3d at 83). Primary jurisdiction typically does not apply where a lawsuit seeks money damages rather than injunctive relief. *Palmer*, 2022 WL 10208502, at *6.

*First*, in cases such as this—involving claims that a product label was misleading or deceptive—courts generally find that "the ultimate question is one of consumer confusion rather than anything of the technical or scientific nature better suited to the FDA." *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134, at *10 (E.D.N.Y. May 14, 2015); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *14 (E.D.N.Y.

---

[12] The Second Circuit recently reversed a district court's application of primary jurisdiction, observing that courts have an "obligation" to exercise their jurisdiction and emphasizing that primary jurisdiction is a "narrow exception" that applies infrequently. *Palmer v. Amazon.com, Inc.*, --- F.4th ---, 2022 WL 10208502, at *6 (2d Cir. 2022) (internal quotations omitted).

July 21, 2010) ("the ultimate issue is whether consumers could reasonably be misled by the violations"). The issue in this case is not whether or to what extent the FDA can or should regulate cosmetic products; the issue is whether consumers were misled when they purchased a product that contained an undisclosed carcinogen. "Primary jurisdiction does not extend to a legal question that is within the conventional competence of the courts." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995) (internal quotation omitted). This factor weighs against application of the primary jurisdiction doctrine.

*Second*, although the FDA has the power to determine whether a cosmetic product label is misleading, "[t]o determine whether a question falls particularly within an agency's discretion, a court looks not to whether administrative proceedings will make *any* contribution to resolving the question before it, but whether administrative proceedings are likely to make a *meaningful* contribution to resolving the question." *Palmer*, 2022 WL 10208502, at *8 (internal quotation omitted). Here, the FDA's prospective guidance would not "materially assist the court in resolving difficult factual questions to determine whether specified legal standards have been violated." *Id.* at *9. This factor weighs against application of the primary jurisdiction doctrine.

*Third*, there is little risk that the FDA will make a ruling concerning PFAS that would affect the legal issues in this case. The focus of this prong is not whether the FDA will make *any* ruling concerning PFAS, but whether it will make a ruling "contemplating the same issue" as this case, which is whether Defendant's labels are misleading about the presence of PFAS. *Goldemberg*, 8 F. Supp. 3d at 477. The FDA has not made any indication that a determination on such an issue is forthcoming or even under consideration. And the primary jurisdiction doctrine does not demand that courts simply wait for a potential agency action coming at some time in the future. This factor weighs against application of the primary jurisdiction doctrine.

*Fourth*, Defendant has cited to no recent agency action or application that contemplates the same issues present in this case. "[W]here no prior application has been made [this] factor may weigh against deferral."[13] *Goldemberg*, 8 F. Supp. 3d at 477. This factor weighs against application of the primary jurisdiction doctrine. In short, this Court is well suited to resolve Plaintiffs' claims and it should not dismiss or abstain on the basis of primary jurisdiction.

## E.   Plaintiffs' Claims Are Plausible and Grounded in Established Law.

L'Oreal admits the theory of Plaintiffs' case is true: "[t]he mascaras' labeling says nothing at all about PFAS." (Br. at 2.) Yet, undisclosed PFAS are present in the Waterproof Mascara Products, which Plaintiffs purchased. Courts in this Circuit have routinely found that consumer deception claims of this sort are plausible. All that Plaintiffs must establish, and what the FAC establishes here, is that Defendant's "allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances," *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), and that Plaintiffs were misled, leading to economic harm. L'Oreal's attempt to cast Plaintiffs' allegations as "implausible" at the pleadings stage is without merit.

### 1.   Plaintiffs plausibly allege that reasonable consumers were misled by Defendant's misrepresentations and material omissions.

L'Oreal misrepresented that its Waterproof Mascara Products were safe, effective, high quality, and suitable for use on consumers' eyelashes around their eyes. (FAC ¶ 20.) The product packaging emphasized that Defendant's mascaras were appropriate for "sensitive eyes" and "contact wearers," and that the products were "ophthalmologist approved." (*Id.* ¶¶ 122-25.) And, nowhere on the packaging, labeling, or on the ingredient list did any of the Waterproof Mascara Products disclose that they contained toxic PFAS, including PFOA. (*Id.* ¶ 119.) These representations, in sum, conveyed to reasonable consumers that the Waterproof Mascara Products

---

[13] Defendant also discusses proposed legislation, which is not a factor in the primary jurisdiction analysis.

were safe and certainly did not contain toxic, carcinogenic chemicals. But they did. These statements matter because, as Plaintiffs allege, consumers prefer products labeled as safe, organic, clean, and green, and are willing to pay more for them. (*Id.* ¶¶ 34-41.) Further, Plaintiffs reasonably relied on these statements when purchasing the Waterproof Mascara Products, a purchasing decision they would not have otherwise made. To contend that these misrepresentations and omissions are not "plausible" ignores Plaintiffs' allegations and asks the Court to decide an issue of fact at the pleadings stage. *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021) (whether an allegedly deceptive advertisement would have misled a reasonable consumer "is generally a question of fact not suited for resolution at the motion to dismiss stage," particularly if it has been pleaded that reasonable consumers "could be misled") (cleaned up).

Context is crucial in determining whether a reasonable consumer would have been misled by a particular advertisement. *McVetty v. TomTom N. Am., Inc.*, No. 19 CV 4908 (NSR), 2021 WL 965239, at *5 (S.D.N.Y. Mar. 13, 2021) (quoting *Fink*, 714 F.3d at 742); *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) ("Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."). Here, Defendant's misrepresentations and omissions about the products' content and safety are made even more misleading because the ingredient list omits the presence of PFAS so a consumer cannot reference the list for themselves to ensure safety. (FAC ¶¶ 23, 118-120); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging"); *Goldemberg*, 8 F. Supp.3d at 480 (denying motion to dismiss and explaining that the court could not determine, on

21

a Rule 12 motion, that packaging and ingredient lists would not mislead a reasonable consumer).

The cases L'Oreal relies on in support of its argument are all distinguishable. (Br. at 19-23.) For example, Defendant cites *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241 (S.D.N.Y. 2022), in apparent support for its statement that it made no misrepresentations, and that Plaintiffs allege none, with respect to the ingredient lists.[14] (*See* Br. at 21.) In *Pfizer*, the plaintiffs alleged, in part, that a contaminant in the smoking cessation drug Chantix rendered the active ingredient list false and misleading, as the contaminant should also have been included on the list of active ingredients. *Id.* This case is easily distinguishable, as the Waterproof Mascara Products' labels contain an "INGREDIENTS" list, not a select list of "active" ingredients, like the drug at issue in *Pfizer*. (FAC ¶¶ 123-126.) Here, it is reasonable to infer that a consumer purchasing these products would assume the complete ingredient lists on the mascaras' labels to be comprehensive, or at least to list toxic and/or carcinogenic ingredients.[15] (FAC ¶ 120; *see also id.* ¶¶ 92, 114-119.)

Defendant contends that the contents of the ingredient lists are irrelevant as a matter of law because a single paragraph in the original, pre-consolidation complaint—that no longer appears in the operative pleading—purportedly "disavowed the ingredient list as a plausible source of consumer expectations."[16] (Br. at 21-22.) But, as noted above, allegations in a prior complaint are

---

[14] L'Oreal also cites *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1121 (S.D. Ind. 2011), which analyzed claims brought under Indiana law. Plaintiffs do not bring any claims under Indiana law, rendering this case inapposite.

[15] L'Oreal also cites *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1344 (8th Cir. 2022), which dismissed a complaint under Minnesota law for failing to plausibly allege that "biologically appropriate" statements about dog food containing heavy metals were misleading. In *Champion*, "[p]laintiffs did not allege . . . that the level of heavy metals present in Champion's dog food is harmful to dogs." In contrast, Plaintiffs here do allege that the PFAS contained in the Waterproof Mascara Products, including PFOA, are harmful to humans. (*See, e.g.,* FAC ¶¶ 21, 99-101.)

[16] Although the Court should not entertain this argument, the paragraph in question in the original complaint filed by Plaintiffs Hicks and Vargas stated, in part, "a reasonable consumer would be unlikely to identify ***most*** of the compounds as part of the PFAS family simply by looking at the name of the ingredient." (Compl., Dkt. 1 ¶ 66 (emphasis added).) "Most," however, does not mean "all." Here, Defendant's products contain PFOA, a toxic chemical that has been the subject of many recent news articles and was the subject of a 2021 major motion picture, Dark Waters. Thus, it is at least plausible that reasonable consumers would recognize this chemical on an ingredient list.

superseded by a subsequent amended pleading. *See Shields*, 25 F.3d at 1128. Further, and more importantly, consumer deception is a function of the sum of a defendant's misrepresentations and omissions, and here Defendant not only provides a deficient ingredient list, but also deceptive packaging, labeling, and company statements regarding the suitability of the mascara products. None of Defendant's informational materials disclose the presence of PFAS, leaving consumers plausibly deceived. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 639 (2d Cir. 2018) (a defendant cannot cure conspicuous misrepresentations on the front of its packaging by listing ingredients in small print in an ingredient list).

Defendant also relies on a recent decision of a trial court in the District of Columbia, *GMO Free USA v. Cover Girl Cosmetics*, No. 2021 CA 004786 B, at 7 (June 1, 2022). (Ex. 5, Dkt. 30-5.) Although that case involved a manufacturer's use of ingredients containing PFAS in its cosmetics, the similarities end there. In *GMO Free*, the plaintiffs alleged that the defendant deceptively used PFAS in its CoverGirl TruBlend Mineral Pressed Powder. (*Id.* at 2.) However, in *GMO Free*, unlike here, the defendant **disclosed the presence of PFAS** in the Powder's ingredient list, thus providing consumers the choice they were deprived of in the instant action. (*Id.* at 6.) This factual difference renders *GMO Free* completely inapposite.[17]

### 2. Reasonable consumers do not expect the Waterproof Mascara Products to contain undisclosed PFAS.

Defendant next contends that the FAC alleges PFAS are everywhere, which in turn means that reasonable consumers should also expect the chemical to be present in the Waterproof Mascara

---

[17] Similarly, *Parks v. Ainsworth Pet Nutrition, LLC*, is distinguishable because, here, Plaintiffs' independent testing confirmed that the level of PFAS in the waterproof mascara products is above a safe level. No. 18 CIV. 6936 (LLS), 2020 WL 832863, at *2 (S.D.N.Y. Feb. 20, 2020) ("The level of glyphosate in the tested Products is negligible and significantly lower than the FDA's limit, which supports a finding that the Products' glyphosate residue is not likely to affect consumer choice, and that labeling them "natural" is not materially misleading to a reasonable consumer."). Plaintiffs plausibly allege that PFAS are toxic at extremely low levels and the EPA has determined that PFOA, one PFAS found in Defendant's product, is harmful at any level of detection. (FAC ¶¶ 21, 64.)

Products. In other words, Defendant essentially acknowledges its products contain PFAS but says consumers should have known. Although this argument is revealing of what Defendant intended for its product to contain, it is also based on misrepresentations of the FAC's allegations.

Plaintiffs allege, accurately, that PFAS have been found "in certain bodies of water, as well as some drinking water resources, fish, and marine mammals." (FAC ¶ 45.) Contrary to Defendant's argument, the FAC does not suggest that Plaintiffs expect PFAS to be in every product manufactured from raw materials (even assuming waterproof mascara is manufactured from raw materials, despite there being no facts in the pleading regarding the manufacturing process of the waterproof mascara products).[18] Indeed, the FAC pleads just the opposite, alleging that some cosmetic manufacturers create and market PFAS-free products because they know that consumers desire these products. (*See id.* ¶¶ 37-39.) L'Oreal's entire argument here attempts to cherry-pick phrases from allegations and thereby assume facts not in evidence. Instead, the FAC plausibly alleges that reasonable consumers do not expect their cosmetic products to contain undisclosed carcinogenic PFAS and certainly did not expect the Waterproof Mascara Products to contain these chemicals. Defendant's unsupported argument should be rejected. *See Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 WL 4895234, at *6 (E.D.N.Y. Aug. 17, 2015) (denying motion to dismiss claims that products' "natural" labeling was misleading, in part because "whether [defendant's] colors are not achievable in nature and whether an average consumer would know whether a vibrant color can be created with natural ingredients are questions of fact for the jury").

### F.   The Court Should Reject Defendant's Undeveloped Claim That Plaintiffs' Liability Theory is Unpled.

In an undeveloped, four-sentence argument citing no authority, Defendant contends that

---

[18] Defendant's argument about the ubiquity of PFAS in raw materials and the natural environment is based largely on its interpretation of materials outside the pleadings, as well as references to fragments of allegations in the original, superseded complaint. (*See* Br. at 24.)

the underlying "liable act" is "simply unpled." (Br. at 25.) The problematic act is, as L'Oreal admits, that it did not disclose that its Waterproof Mascara Products contained PFAS. (*See id.* at 20; FAC ¶¶ 98-99.) Over the course of 75 pages and nearly 500 paragraphs, Plaintiffs set forth allegations regarding the content of these products, Defendant's misrepresentations and omissions, and consumers' reaction and response to the misrepresentations and omissions. Other courts have recognized that a pleading alleging a product contains undisclosed PFAS is sufficient to overcome Rule 12(b)(6).[19] *See, e.g., Kanan v. Thinx Inc.*, No. CV 20-10341, 2021 WL 4464200, at *5 (C.D. Cal. June 23, 2021). Plaintiffs have certainly met their pleading obligations here. The Court should accordingly reject Defendant's final argument and allow the parties to proceed to discovery.

## REQUEST FOR LEAVE TO AMEND

Should the Court find that any of the Complaint's causes of action are insufficiently pled, Plaintiffs respectfully request that the dismissal be without prejudice and that leave to amend be granted. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss and Request for Judicial Notice.

Dated: November 4, 2022                    Respectfully submitted,

                                            _/s/ James Bilsborrow_

                                            James Bilsborrow (JB8204)
                                            *jbilsborrow@weitzlux.com*
                                            **WEITZ & LUXENBERG, PC**
                                            700 Broadway

---

[19] Although Defendant makes passing reference to Rule 9(b), it sets forth no authority holding that the state-law claims pled in the FAC must meet Rule 9(b)'s requirements. It is black-letter law, for example, that claims pled under New York General Obligations Law § 349 are not subject to Rule 9(b). *See, e.g., Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 67-68 (E.D.N.Y. 2017). Defendant fails to meet its burden on this argument and it should be rejected.

New York, NY 10003
Phone: (212) 558-5500
Fax:     (212) 344-5461

Devin Bolton (SBN 290037) (*pro hac vice* forthcoming)
   *dbolton@weitzlux.com*
**WEITZ & LUXENBERG, PC**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (212) 558-5552
Fax:     (212) 344-5461

Christopher A. Seeger
   *cseeger@seegerweiss.com*
Jeff Grand
   *jgrand@seegerweiss.com*
Christopher Ayers
   *cayers@seegerweiss.com*
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
Phone: (973) 639-9100
Fax: (973) 679-8656

Sam Strauss (p*ro hac vice*)
   *sam@turkestrauss.com*
Raina Borrelli (*pro hac vice*)
   *raina@turkestrauss.com*
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423

Charles E. Schaffer
   *cshaffer@lfsblaw.com*
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street – Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663

Jason P. Sultzer
   *sultzerj@thesultzerlawgroup.com*
**THE SULTZER LAW GROUP**

26

85 Civic Center Plaza
Suite 200
Poughkeepsie, NY 12601
Phone: (845) 483-7100

*Attorneys for Plaintiffs and Putative Classes*

## CERTIFICATE OF SERVICE

I certify that on November 4, 2022, I electronically filed the foregoing memorandum with the Clerk of the Southern District of New York using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ James J. Bilsborrow*