UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZAIDA HICKS *et al.*, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>L'ORÉAL USA, INC.,<br><br>  Defendant. | Case No. 1:22-cv-01989-JPC<br><br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CASE** |

Peter G. Siachos
psiachos@grsm.com
JoAnna M. Doherty
jdoherty@grsm.com
**GORDON REES SCULLY MANSUKHANI, LLP**
18 Columbia Turnpike, suite 220
Florham Park, New Jersey  07932
Tel.:  973-549-2500
Fax:  973-377-1911

Miles D. Scully*
mscully@grsm.com
Justin D. Lewis
jlewis@grsm.com
**GORDON REES SCULLY MANSUKHANI, LLP**
101 W. Broadway, suite 2000
San Diego, California  92101
Tel.:  619-696-6700
Fax:  619-696-7124

* *pro hac vice* app. forthcoming

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

THE OPPOSITION DOES NOT SALVAGE THE CASE. ............................................................ 1

I.   Plaintiffs Do Not Meet Their Standing Burden, But Ask The Court To Speculate............ 1

II.  Federal Law Expressly Preempts The FAC, A Separate Basis For Dismissal. .................. 6

III. The FAC Also Invades The FDA's Primary Jurisdiction. .................................................. 7

IV.  The Assumption Underlying The Liability Theory Lacks A Plausible Basis. ................... 7

V.   In Critical Ways, Plaintiffs' Theory Is Unpled. ................................................................. 10

IN CONCLUSION.................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akpan v. N.Y. State Div. for Youth*,
  1999 WL 787838 (S.D.N.Y. Sep. 30, 1999) ................................................................. 2

*Akridge v. Whole Foods Mkt. Grp., Inc.*,
  2022 WL 955945 (S.D.N.Y. Mar. 30, 2022) ................................................................ 3

*Austin v. Ford Models, Inc.*,
  149 F.3d 148 (2d Cir. 1998) ........................................................................................ 8

*Axon v. Florida's Natural Growers, Inc.*,
  813 Fed. Appx. 701 (2d Cir. 2020) ......................................................................... 8, 9

*Budhani v. Monster Energy Co.*,
  527 F. Supp. 3d 667 (S.D.N.Y. 2021) ......................................................................... 9

*Calcano v. Swarovski N. Am. Ltd.*,
  36 F.4th 68 (2d Cir. 2022) .......................................................................................... 2

*Clapper v. Amnesty Intl. USA*,
  568 U.S. 398 (2013) .................................................................................................... 5

*Critcher v. L'Oréal USA, Inc.*,
  959 F.3d 31 (2d Cir. 2020) ...................................................................................... 6, 7

*Fishon v. Mars Petcare US, Inc.*,
  501 F. Supp. 3d 555 (M.D. Tenn. 2020) ..................................................................... 9

*GMO Free USA v. Cover Girl Cosmetics*,
  No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022) ............................................. 9

*Goldemberg v. J&J Consumer Cos., Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......................................................................... 8, 9

*Goldstein v. Walmart, Inc.*,
  2022 WL 16540837 (S.D.N.Y. Oct. 28, 2022) ........................................................... 6

*Gordon v. Target Corp.*,
  2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) .............................................................. 1

*Harris v. Pfizer, Inc.*,
  586 F. Supp. 3d 231 (S.D.N.Y. 2022) ............................................................... 8, 9, 10

*Herrington v. J&J Consumer Cos.*,
  2010 WL 3448531 (N.D. Cal. Sep. 1, 2010) ......................................................... 6, 10

*Home Owners Ins. Co. v. ADT, LLC*,
  109 F. Supp. 3d 1000 (2015) .................................................................................... 10

*Housey v. P&G Co.*,
  2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ............................................................................... 1

*Hughes v. Chattem, Inc.*,
  818 F. Supp. 1112 (S.D. Ind. 2011) ......................................................................................... 8

*In re Amla Litig.*,
  320 F. Supp. 3d 578 (S.D.N.Y. 2018) ................................................................................. 5, 6

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
  2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ....................................................................... 10

*In re Gen. Mills Glyphosate Litig.*,
  2017 WL 2983877 (D. Minn. July 12, 2017) .......................................................................... 2

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017) ................................................................................................ 2, 3

*Kanan v. Thinx, Inc.*,
  2021 WL 4464200 (C.D. Cal. June 23, 2021) .................................................................. 9, 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................................... 10

*Koronthaly v. L'Oréal USA, Inc.*,
  2008 WL 2938045 (D.N.J. July 29, 2008) .............................................................................. 6

*Levinson v. J&J Consumer Cos., Inc.*,
  2010 WL 3024847 (D.N.J. Aug. 2, 2010) ............................................................................... 3

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) .................................................................................................... 8

*Moeller v. Samsung Elecs. Am., Inc.*,
  __ F. Supp. 3d __, 2022 WL 4182205 (S.D. Iowa Aug. 24, 2022) ........................................ 10

*Myers v. Wakefern Food Corp.*,
  2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ........................................................................... 10

*Parks v. Ainsworth Pet Nutrition, LLC*,
  2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ..................................................................... 9, 10

*Paulino v. Conopco, Inc.*,
  2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ........................................................................ 9

*Poindexter v. EMI Record Grp., Inc.*,
  2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ........................................................................ 8

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
  579 U.S. 115 (2016) ................................................................................................................ 6

*Tomasino v. Estee Lauder Cos., Inc.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ..................................................................................... 10

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
  117 F. Supp. 3d 722 (M.D.N.C. 2015) ................................................................................. 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................................. 8

**Statutes**

21 U.S.C. § 362(a) ......................................................................................................................... 7

21 U.S.C. § 379s(a) .................................................................................................................. 6, 7

N.Y. G.B.L. § 349 ........................................................................................................................ 10

N.Y. G.B.L. § 350 ........................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 12 .......................................................................................................................... 1

Fed. R. Civ. P. 8(a) ..................................................................................................................... 10

Fed. R. Civ. P. 9(b) ..................................................................................................................... 10

## INTRODUCTION

The opposition does not retrieve the FAC from what would be its justified dismissal on multiple grounds.  Plaintiffs' overpayment theory of standing asks the Court just to assume the mascaras had unpled, injurious levels of unnamed but potentially harmful forms of PFAS.  Plaintiffs don't know if their own mascaras had any PFAS at all.  Beyond that, federal law expressly preempts the cosmetic labeling obligations they seek to impose while invading the FDA's primary jurisdiction.  And, the FAC fails a second time to plead a plausible basis for Plaintiffs' assumption that their mascaras were certain to be free of any trace of PFAS.  To be sure, the FAC does *not* allege L'Oréal used any PFAS compound as an ingredient.

Plaintiffs answer the motion with the banal retorts of claimants whose inability to plead has twice become clear.  Yet, L'Oréal does not ask the Court to resolve the merits or to find facts.  The motion invokes the FDA and EPA's public advisories, along with the key sources the FAC itself uses to construct the case, only to illuminate Plaintiffs' failures to meet their pleading burdens with plausibility.  Courts routinely refer to such materials on Rule 12 motions.[1]

Nor is this just the garden-variety consumer action that the opposition contends.  If credited, its ambitious theory of liability for mere traces of PFAS impurities, coupled with its premises about their spread and persistence, threatens to expand PFAS litigation to nearly every consumable good.[2]  In that sense, the FAC proves too much.

Still, it pleads far too little.  Plaintiffs' theory of injury is conjecture, and their preempted theory of deception has no objective foundation.  Dismissal with prejudice is warranted.

### THE OPPOSITION DOES NOT SALVAGE THE CASE.

**I.    Plaintiffs Do Not Meet Their Standing Burden, But Ask The Court To Speculate.**

Plaintiffs do not plausibly allege a concrete and particularized injury-in-fact.  Though a

---

[1] *Gordon v. Target Corp.*, 2022 WL 836773, at *2-3 (S.D.N.Y. Mar. 18, 2022) ("courts routinely take judicial notice of…documents which are publicly available on the FDA's website," and need not accept their truth to consider them under Rule 12); *Housey v. P&G Co.*, 2022 WL 874731, at *6 (S.D.N.Y. Mar. 24, 2022) ("no legal basis" for plaintiff's objection to court's "proper[]" Rule 12 consideration of complaint's own scientific sources).
[2] *E.g.*, Natl. Law Review, "PFAS Consumer Fraud Lawsuit Just the Latest…and Only the Beginning" (Sep. 6, 2022), available at <<https://www.natlawreview.com/article/pfas-consumer-fraud-lawsuit-just-latest-and-only-beginning>> (last accessed Nov. 18, 2022) (citing this action as a "test case" for expansion of PFAS litigation).

plaintiff cannot "ask the court to draw unwarranted inferences in order to find standing" (*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022)), they ask the Court to assume multiple hypothetical components of their theory of economic injury.

*First*, to assert the particularized injury Article III demands, it is "undisputed" Plaintiffs must plausibly allege at minimum that their own units of mascara contained PFAS. Dkt. 33 at 20 (citing ECF page nos.). The parties only differ whether there's any plausible basis for Plaintiffs' "information and belief" that they did. *E.g.*, FAC, ¶ 158; *id*. at ¶¶ 375, 376 (backpedaling to merely a "risk of containing" PFAS); *id.* at ¶¶ 381, 383, 386, 387 (same); *Akpan v. N.Y. State Div. for Youth*, 1999 WL 787838, at *5 (S.D.N.Y. Sep. 30, 1999) ("Upon information and belief" "is just another way of saying, 'I don't have any facts, but I would like it to be true.'").

The FAC's allegations are no comparison to those that conferred standing in *John*, the opposition's main case. *John v. Whole Foods Mkt. Grp., Inc*., 858 F.3d 732 (2d Cir. 2017). In *John*, testing of 80 products found that "*all*" were labeled with false weights, and fully 89% violated federal limits for weight labeling deviations. *Id*. at 734 (emphasis added). The *John* plaintiff plausibly alleged purchasing at least one of the mislabeled products because he "routinely" "made regular purchases" of them at Whole Foods locations implicated by the testing during the same months it revealed the "systematic" mislabeling. *Id*. at 734-735.

In sharp contrast to *John*, the FAC alleges nothing "systematic," let alone that *all* or 89% of units of the mascaras contained forms of PFAS.[3] The FAC does not even say what fraction of what sample tested to contain PFAS. Its slim testing allegations permit no inference that even a significant minority of mascaras contained PFAS, much less that Plaintiffs' own purchases did. To be sure, nothing else in the FAC permits that inference. For instance, Plaintiffs do not allege L'Oréal used any PFAS as ingredients.[4] *See Levinson v. J&J Consumer Cos., Inc*., 2010 WL

---

[3] Unlike here, the *General Mills* plaintiffs "alleged that all Nature Valley Products contain glyphosate." *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *3 (D. Minn. July 12, 2017) (emphasis in original).

[4] The opposition charges that the motion "misrepresent[ed]" the FAC by noting the conspicuous absence of any such allegation. Dkt. 33 at 11, n. 4. One can scour the FAC from tip to tail and find none. The opposition therefore invites the Court to supply the missing allegation, but cites no basis in the FAC to plausibly infer that L'Oréal used any PFAS as ingredients -- and certainly not when detected only in some few units at vanishingly infinitesimal levels on the order of 0.004 parts per trillion, which is 1 molecule out of 250 trillion. *See* dkt. 30 at 15-16.

3024847, at *3-4 (D.N.J. Aug. 2, 2010) (dismissal where plaintiffs did not assert cosmetic contaminant was an ingredient under FDA regulations). To the contrary, they admit PFAS in cosmetics can trace to "impurities," "degradation," or "byproduct[s]," phenomena facially capable of variation from one batch of a product to the next. FAC, ¶ 79; dkt. 33 at 11.

These considerations leave Plaintiffs without a plausible basis to allege there was a single PFAS molecule in their own mascaras. Grossly dissimilar to *John*, the FAC's unfounded speculation is akin to that rejected in contamination cases by courts in this circuit and around the nation. *Gaminde v. Long Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) ("speculation to allege that because two CVS Krill Oil bottles in a USDA study" had "less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well"); *Akridge v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 955945, at *5-*8 (S.D.N.Y. Mar. 30, 2022) (no standing where plaintiff did not plausibly allege "that he actually purchased products containing unidentified allergens," despite allegedly "systemic" practices); dkt. 30 at 11-12.

*Second*, because Plaintiffs still do not plead what PFAS chemicals their own units of mascara contained, they ask the Court to speculate they held risky types of PFAS. The opposition namechecks PFOA as a compound Plaintiffs' lab supposedly found in whatever few units it tested for litigation, but does not and cannot cite any allegation that Plaintiffs' own mascaras held PFOA or any other identifiable form of PFAS found to affect human health.

Plaintiffs' bid to frame *all* PFAS compounds as a uniformly dangerous monolith lacks plausibility. Plaintiffs cannot even square their contention with their own allegations. The FAC relies heavily on the EPA's outlook, but admits that agency has issued drinking water advisories for only four specific compounds, while regarding as hazardous only two, among what Plaintiffs call "thousands of unique" PFAS chemicals. FAC, ¶¶ 64, 49, 44. Meanwhile, the FAC and opposition all but ignore the agency with actual jurisdiction of cosmetics, because the FDA *affirmatively authorizes* forms of PFAS as safe for use in food applications despite the risk of their dietary *ingestion*. Ex. 3 at 2, 3-4; *see also* Ex. 2 at 2, 3 (FDA notes risk of "certain" types among "diverse group" of PFAS). Plaintiffs' theory of monolithic danger also lacks basis in

3

their FAC's key sources, so on the back foot the opposition resorts to charging that the motion misrepresents them. It does not. The sources say what they say, which is why the complaint itself originally asserted that health risk attends only *some* forms of PFAS. Dkt. 1, ¶ 44.

*Third*, even though the mascaras' supposed capacity to harm human health is the *entire* basis of Plaintiffs' purported economic injury, the FAC does not allege what threshold of any form of PFAS in mascara is required to affect human health. Nor does it plead that any unit of L'Oréal's mascaras surpassed that unpled level, whether it was extremely low or otherwise. Both the FAC and opposition ignore the FDA's announcement that even "relatively *high concentrations*" of five forms of PFAS "impurities that were detected in the largest number" of cosmetics were found "unlikely to pose a health risk." Ex. 1 at 2 (emphasis added).

The opposition also embellishes the FAC. Nowhere does it allege that PFOA is dangerous at any detectable level, not in drinking water nor mascara. The FAC merely alleges Plaintiffs' lab detected PFOA in some unknown few litigation samples at unpled concentrations above the EPA's lifetime advisory level for drinking water. As L'Oréal's motion set out, the EPA advisory level means one can safely drink water contaminated at the advisory level for an entire lifetime. Ex. 8 at 3. It is set conservatively to provide a "margin of protection." Ex. 9 at 2. It does *not* mean that exposure to any concentration above the advisory level is harmful, but simply that the EPA cannot vouch for the safety of a lifetime of drinking water above that level. It might pose risk or might not. FAC, ¶ 21 (such a level "can" be toxic, meaning maybe). Of course, mascaras are not ingested like drinking water, and each Plaintiff has stopped using them after greatly less than a human lifetime. The opposition does not answer any of this because the way the FAC oversells the meaning of the EPA's drinking water advisory level is so transparent.

But let's stick with water for a moment. According to New York City's most recent water quality report, some samples of the same tap water dispensed in the Moynihan Courthouse contained two nanograms of PFOA per liter, five times below the city's limit of 10 ng/L.[5] The

---

[5] NYC Dept. of Environmental Protection, "New York City Drinking Water Supply and Quality Report 2021," p. 13, available at <<https://www.nyc.gov/assets/dep/downloads/pdf/water/drinking-water/drinking-water-supply-quality-report/2021-drinking-water-supply-quality-report.pdf>> (last accessed Nov. 18, 2022).

detected 2 ng/L equals 2 parts per trillion.[6]  Plaintiffs here are demanding refunds because their lab detected some unpled quantity more than 0.004 parts per trillion of PFOA in some few mascara samples their counsel bought for litigation purposes.  Dkt. 33 at 11.  To put the triviality of Plaintiffs' charge in perspective, the Court could encounter about *five hundred times* that concentration of PFOA with a random sip or splash from a courthouse water fountain or sink.[7]

Unable to plead what concentrations of what PFAS compounds are harmful in cosmetics, Plaintiffs ask the Court to speculate that the mascaras contained enough to injure human health.  L'Oréal cited an array of cases disposing of closely analogous theories.  Dkt. 30 at 14-17.  The opposition's attempt to distinguish them glosses over what they share with Plaintiffs' theory:  a core failure to allege that the products held harmful levels of any contaminant.[8]

*Fourth*, Plaintiffs' supposed economic injury rests on speculation that some PFAS chemicals might cause future diseases.  That potential pathogenic capacity is allegedly what makes their purchase prices into present, existing injuries-in-fact.  It is the case's entire *raison d'être*.  L'Oréal's motion detailed how the FAC itself reveals this to be yet another layer of conjecture.  So, too, does the FDA's stance on PFAS in cosmetics.  The opposition protests that Plaintiffs do not seek to recover for personal injuries.  That goes without saying and misses the point.  The FAC's sole theory of standing is that Plaintiffs overpaid precisely because the products *might* cause future physical injuries.  They cannot premise their purported economic injury on such speculation.  *Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 402, 407, 418 (2013) (fear of "hypothetical future harm that is not certainly impending" "cannot manufacture

---

[6] EPA, "Converting Laboratory Units Into Consumer Confidence Report Units," p. 2, available at <<https://www.epa.gov/sites/default/files/2015-09/documents/epa816f15001.pdf>> (last accessed Nov. 18, 2022).
[7] 2 = 0.004 * 500.  And, 0.004 parts per trillion is a <u>mere 1/500,000th</u> of the 2 ng/mL level of "combined PFAS" in blood that the FAC alleges creates a "concern for adverse effects."  FAC, ¶ 65.  2 ng/mL = 2000 ng/L = 2000 ppt.
[8] Plaintiffs do not dispute that levels below the unpled threshold of danger would be trivial.  Trivial exposures are not actionable.  The opposition misreads the *Amla* case L'Oréal cited for that proposition, a case undersigned counsel litigated.  The *Amla* plaintiffs asserted both *overpayment* and personal injuries via multiple theories challenging the chemical compositions of two components of a hair relaxer kit.  *In re Amla Litig.*, 320 F. Supp. 3d 578, 582 (S.D.N.Y. 2018).  Judge Rakoff disposed of *both* the overpayment and personal injury theories in connection with the allegedly unreasonable danger of the kit's main component, noting in part that "a loss of molecular structural integrity that the user does not even notice is not actionable."  *Id*. at 586; *id*. at 587 ("all claims" so premised).  That principle runs parallel to the FAC's failure to allege the mascaras had enough of any PFAS chemical to make even the slightest difference to human health.

standing" to pose past expenditures as present injuries-in-fact traceable to a defendant's conduct); *Herrington v. J&J Consumer Cos.*, 2010 WL 3448531, at *3, *4 (N.D. Cal. Sep. 1, 2010) (dismissal where alleged toxin in child bath product "*may* be carcinogenic"); *Koronthaly v. L'Oréal USA, Inc.*, 2008 WL 2938045, at *1, *4-5 (D.N.J. July 29, 2008) (*affirmed* 374 Fed. Appx. 257 (3d Cir. 2010)) ("[c]ases analogous to the present matter have routinely failed").[9]

## II. Federal Law Expressly Preempts The FAC, A Separate Basis For Dismissal.

The FAC also fails by express preemption. It uses state law to impose special cosmetic labeling requirements regarding PFAS chemicals that federal law does not. The opposition first calls up a non-existent presumption against express preemption. *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) ("because the statute contains an express pre-emption clause, we do not invoke any presumption against pre-emption") (internal quotations omitted).

Importantly, the opposition does not contend that the FAC wields state law requirements outside the extraordinarily broad scope of the FDCA's express cosmetic preemption. 21 U.S.C. § 379s(a). It could not so argue, considering that federal law squarely and intricately regulates labeling concerning the composition of consumer cosmetics. *See* dkt. 30 at 21-22.

Rather, the opposition attempts to evade preemption by posing the FAC as precisely mimicking cosmetic labeling requirements already imposed by federal law. Indeed, to escape cosmetic preemption the FAC's putative labeling obligations must be "*exactly the same* as those set forth in the FDCA and its regulations." *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31, 35-36 (2d Cir. 2020) (emphasis in original). Yet, the opposition cites no federal requirements that cosmetic ingredient lists disclose PFAS compounds as impurities, name them as incidental ingredients, or warn of potential traces of PFAS compounds not used as ingredients. There are none. Nor does any federal rule dictate that cosmetics labels bear a disclosure about PFAS outside the ingredient list, or avoid other labeling that supposedly becomes misleading without a special PFAS disclosure. *See Goldstein v. Walmart, Inc.*, 2022 WL 16540837, at *11 (S.D.N.Y. Oct. 28, 2022) (illustrating FDCA preemption of both omission and misrepresentation theories).

---

[9] *Amla* implicated allegedly immediate injuries, not speculation of future injury. *Amla*, 320 F. Supp. 3d at 584.

Rather, all of these purported state law obligations are additional and non-identical to federal cosmetic labeling requirements. 21 U.S.C. § 379s(a). They are therefore preempted. *Id.*

The sole aspect of the case that might mimic federal law and escape preemption is simply not alleged. Nowhere does the FAC assert L'Oréal used any PFAS compound as an ingredient subject to federally mandated disclosure in the ingredient list. The opposition's detour on the intent issue is incorrect, but also ineffective. The FAC doesn't allege L'Oréal used PFAS intentionally, unintentionally, incidentally, or non-incidentally as any sort of ingredient, period.

Finally, the opposition portrays the FAC as mirroring federal law's generalized ban on misbranded cosmetics. 21 U.S.C. § 362(a). The Second Circuit already rejected that argument. *Critcher*, 959 F.3d at 37-38. Putting aside the FAC's failure to invoke section 362(a) (*id.* at 38), its "general requirement" cannot be read to impose the particular labeling requirements the FAC asserts. *Id.* Crediting Plaintiffs' position would render the cosmetic preemption statute toothless, especially considering the intricate ways federal law regulates labeling for the composition of cosmetics "with specificity" in a "technical nature." *Id.*

In sum, dismissal is required because the FAC alleges no theory evading the "broad, categorical" scope of cosmetic labeling preemption. *Critcher*, 959 F.3d at 38.

**III.     The FAC Also Invades The FDA's Primary Jurisdiction.**

Given cosmetic PFAS litigation's novelty, the opposition does not explain how this case can avoid the technical issues of science and policymaking L'Oréal cited. Dkt. 30 at 23, n. 6-7.

**IV.     The Assumption Underlying The Liability Theory Lacks A Plausible Basis.**

The opposition does not dispute that the entire FAC fails if Plaintiffs lacked plausible, objective grounds to assume that the cosmetics would be free of any trace of PFAS. L'Oréal's motion set out why there's no plausible basis for that assumption. The FAC points to no representation whatsoever about the presence or absence of PFAS. The opposition now cites with approval the reality that the "labeling says nothing at all about PFAS." Dkt. 33 at 28.

So where's the plausible basis for Plaintiffs' assumption? The opposition gestures to various labeling statements about what it calls the mascaras' "suitability." Dkt. 33 at 31, 28. It

7

also invokes aspirational puffery concerning L'Oréal in general, as opposed to the disputed mascaras, on websites that no Plaintiff alleges even seeing. *Id*. at 13-14 (citing FAC, ¶¶ 107-108). Not one of the statements Plaintiffs cite in the opposition or FAC says anything about whether the cosmetics might or might not contain PFAS. FAC, ¶¶ 105-108, 121-126. "A plaintiff does not have a claim…just because she comes away from an advertisement with an incorrect impression. That impression must be reasonably traceable to a misleading statement from the defendant." *Harris v. Pfizer, Inc*., 586 F. Supp. 3d 231, 243-244 (S.D.N.Y. 2022).

Unable to tether Plaintiffs' assumption to any L'Oréal statement, the opposition turns to the FDA-mandated ingredient lists. Yet, the FAC does not allege that L'Oréal uses any PFAS compound as an ingredient. Neither the FAC nor the opposition assert how it could be plausible to assume that an FDA-mandated "ingredient" list will name impurities, traces of potential contaminants, substances a cosmetic only "risk[s] containing" (*e.g*., FAC, ¶ 381), or anything else that's not an ingredient. *Axon v. Florida's Natural Growers, Inc*., 813 Fed. Appx. 701, 705 (2d Cir. 2020) ("presence of glyphosate as a contaminant," "rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer" "would not make assumptions regarding the presence or absence of trace amounts of glyphosate").

Moreover, the ingredient lists do not represent that the listed ingredients form 100% of the products' composition.[10] *Harris,* 586 F. Supp. 3d at 238, 240-241 (though contaminant was not "listed as an ingredient," representation that drug's only active ingredient was varenicline did not support inference that drug would not contain biologically active contaminant, since label did not "state that varenicline is the only biologically active ingredient") (emphasis in original);[11] *Hughes v. Chattem, Inc.*, 818 F. Supp. 1112, 1121 (S.D. Ind. 2011) (ingredient list could not

---

[10] The FAC's reliance on ingredient lists also implausibly contradicts the original complaint's disavowal of their efficacy as a source of information about PFAS, a position that accorded with the Second Circuit's *Mantikas* decision. Dkt. 1, ¶ 66; *Poindexter v. EMI Record Grp., Inc*., 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("the Court may still credit admissions in the original complaint"); *see Austin v. Ford Models, Inc*., 149 F.3d 148, 155 (2d Cir. 1998) (no leave to "erase" admissions via amendment) (*abrogated on other grounds at* 534 U.S. 506).
[11] The opposition's cases stand for the proposition that an ingredient list's obscure small print may not *cure* a more prominent, contrary misrepresentation elsewhere on the label. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008); *Mantikas v. Kellogg Co*., 910 F.3d 633, 637 (2d Cir. 2018); *Goldemberg v. J&J Consumer Cos., Inc*., 8 F. Supp. 3d 467, 479-480 (S.D.N.Y. 2014). That is not the issue presented here.

support assumption that supplement was free of hexavalent chromium). The opposition cites no case framing an ingredient list as a plausible statement of a product's entire composition, nor as a guarantee against any impurities or contaminants. It thus asks the Court to make new law.

More broadly speaking, L'Oréal's motion lined up eleven cases in this circuit and around the nation dismissing closely comparable cases asserting unfounded assumptions about the absence of alleged contaminants in products. *E.g., Axon*, 813 Fed. Appx. at 704-705; *Harris*, 586 F. Supp. 3d at 240-241; *Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL 832863, at *1 (S.D.N.Y. Feb. 20, 2020). They included the first dismissal of another cosmetic PFAS case predicated on purported representations very much like those here. *GMO Free USA v. Cover Girl Cosmetics*, No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022), at p. 7, Ex. 5.[12] In response, the opposition does not cite any contamination case that overcame a plausibility challenge to consumer assumptions resting on such a thin basis as Plaintiffs' here.[13]

Going beyond its *lack* of a plausible basis, Plaintiffs' assumption that their mascaras were certain to be free of PFAS impurities is *implausible* given their view that PFAS widely persist in the same natural environment that furnishes the materials for everything people make. The opposition doesn't much engage this argument and cites no apt authority to the contrary of L'Oréal's. Bristling that the motion wields their own allegations against them, Plaintiffs predictably protest of "cherry-pick[ing]" (dkt. 33 at 24), but L'Oréal cited them faithfully. The opposition errs in contending that L'Oréal has adopted for itself Plaintiffs' views or their implications about the chances for traces of PFAS in consumer goods. The motion examines them *arguendo*. Finally, if some cosmetics firms have managed to create and "market PFAS-

---

[12] The *Cover Girl* court found that comparable marketing statements were not a plausible basis for the plaintiffs to expect "that none of [defendants' makeup] products contains any PFAS chemical." *Id*. That holding stood on its own, and did not rest on PTFE's inclusion in the makeup's ingredient list. *Id*.

[13] Even the opposition's best cases are easily distinguishable. Unlike here, they involved representations found to be on-point with their respective theories of deception. *Kanan v. Thinx, Inc*., 2021 WL 4464200, at *1-2 (C.D. Cal. June 23, 2021) (defendant promised "organic" products "free of harmful chemicals"); *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 561 (M.D. Tenn. 2020) ("grain free" dogfood that contained grains); *Paulino v. Conopco, Inc*., 2015 WL 4895234, at *7 (E.D.N.Y. Aug. 17, 2015) ("Suave NATURALS" allegedly made mostly with synthetics); *Goldemberg*, 8 F. Supp. 3d at 471 (same for "Active Naturals"); *Budhani v. Monster Energy Co*., 527 F. Supp. 3d 667, 673 (S.D.N.Y. 2021) ("Vanilla" labeling and imagery for product with *de minimis* vanilla).

free products" (*id.*), then that underscores once more the lack of any such guarantee here.

Whether framed as misrepresentation or omission, there can be no PFAS-related deception unless Plaintiffs held an objective and plausible basis for expecting mascaras totally free of any trace of PFAS. Their FAC doesn't just fail to plead that. Its allegations foreclose it.

## V.     In Critical Ways, Plaintiffs' Theory Is Unpled.

L'Oréal has closely examined Plaintiffs' failures to plausibly allege that L'Oréal sold them mascaras containing *any* PFAS, much less material concentrations of an identifiable and risky PFAS chemical likely to harm human health. If those speculative voids in the pleading are not matters of standing, then they render the FAC insufficient to state its case with plausibility under Rule 8(a), let alone with Rule 9(b) particularity.[14] *E.g., Parks*, 2020 WL 832863, at \*1-2 (failure to allege material and harmful amount of glyphosate)[15]; *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at \*4 (S.D.N.Y. Mar. 1, 2022) (failure to plausibly allege presence of "artificial flavors"); *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 258 (E.D.N.Y. 2014) (Rule 8 failure to identify substances at issue); *Herrington*, 2010 WL 3448531, at \*6, \*10 (plaintiffs failed to plead consumer fraud "for the same reasons they lack Article III standing").[16]

## IN CONCLUSION

The FAC asserts a preempted, implausible, and unpled liability theory based upon hypothecation of economic injury. Plaintiffs gained full notice of the grounds for dismissal when L'Oréal moved against the original complaint, and the opposition does not indicate what additional amendments might cure the case's defects. *Myers*, 2022 WL 603000, at \*8-9. L'Oréal therefore asks the Court to dismiss this matter without leave to amend.

---

[14] L'Oréal acknowledges that Rule 9(b) has been found inapplicable to claims under N.Y. G.B.L. sections 349 and 350, but the rule governs the FAC's remainder. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Cal. statutes); *Moeller v. Samsung Elecs. Am., Inc.*, __ F. Supp. 3d __, 2022 WL 4182205, at \*6 (S.D. Iowa Aug. 24, 2022) (Iowa statute); *Home Owners Ins. Co. v. ADT, LLC*, 109 F. Supp. 3d 1000, 1008 (Mich. statute); *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) (N.C. statute); *Harris*, 586 F. Supp. 3d at 242 (N.J. statute); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at \*19 (S.D.N.Y. Nov. 12, 2015) (unjust enrichment and warranty claims unless they involve conduct separate from fraud allegations).
[15] Plaintiffs do not credibly distinguish *Parks*. The FDA has set *no limit* on any PFAS in cosmetics, and Plaintiffs facially misconstrue the meaning of the EPA's drinking water advisory level. *See* part I, *supra*; dkt. 30 at 15-16.
[16] The *Kanan* plaintiffs alleged more than Plaintiffs here. *Kanan*, 2021 WL 4464200, at \*1 (they "found short-chain PFAS chemicals within Thinx Underwear at material and above trace amounts").

| | |
|---|---|
| Dated:  November 18, 2022 | Respectfully submitted,<br><br>*s/ Justin D. Lewis*<br><br>Miles D. Scully\*<br>mscully@grsm.com<br>Justin D. Lewis<br>jlewis@grsm.com<br>**GORDON REES SCULLY MANSUKHANI, LLP**<br>101 W. Broadway, suite 2000<br>San Diego, California  92101<br>Tel.:  619-696-6700<br>Fax:  619-696-7124<br><br>Peter G. Siachos<br>psiachos@grsm.com<br>JoAnna M. Doherty<br>jmdoherty@grsm.com<br>**GORDON REES SCULLY MANSUKHANI, LLP**<br>18 Columbia Turnpike, suite 220<br>Florham Park, New Jersey  07932<br>Tel.:  973-549-2500<br>Fax:  973-377-1911<br><br>Attorneys for defendant<br>L'ORÉAL USA, INC.<br><br>\* *pro hac vice* app. forthcoming |